No.  95-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


IN THE MATTER of the Suspension
of the Driver's License of JOHN
D. BAUER,

    Petitioner and Appellant,

    v.

STATE OF MONTANA,

    Respondent and Respondent.


FILED

JAN 30 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Sixth Judicial District,
             In and for the County of Park,
             The Honorable Wm. Nels Swandal, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

       Bruce Becker, Livingston, Montana

       For Respondent:

       Joseph P. Mazurek, Attorney General, Jennifer
       Anders, Helena, Montana; Tara Depuy, Park County
       Attorney, Kendra K. Anderson, Deputy Park County
       Attorney, Livingston, Montana


Submitted on Briefs: November 9, 1995

Decided: January 30, 1996

Filed:

_____
             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Appellant, John D. Bauer (Bauer), appeals the order of the District Court for the Sixth Judicial District, Park County, denying Bauer's petition to reinstate his driver's license and suspending Bauer's driver's license for 90 days. We affirm.

We address the following issue on appeal:

Did the arresting officer have reasonable grounds to believe that Bauer was driving under the influence of alcohol?

BACKGROUND

On January 14, 1995, Park County Deputy Sheriff Steffins was on a routine patrol south of Livingston. At 2:34 a.m., he received a call to back up Livingston City Police Officer Brack. As Deputy Steffins headed north toward Livingston, he observed a unique, dark, 1964 Ford sedan also travelling toward Livingston. Deputy Steffins paced the car going 75-85 miles per hour. He noticed the car braking hard around the curves and observed the car swerve across the center line more than once. At the time, Deputy Steffins estimated his own rate of speed at about 90-95 miles per hour. Deputy Steffins testified that he would have stopped the 1964 Ford sedan immediately for investigation of a DUI if he had not been responding to a request for back up. He did however, radio dispatch to give a description of the car and report his observations.

As Deputy Steffins passed the vehicle, he noticed a male driver and a passenger in the front seat. Shortly after passing the vehicle, the dispatcher advised Deputy Steffins that he was no

2

longer needed in Livingston to back up Officer Brack. At 2:36 a.m., Deputy Steffins pulled onto a Forest Service road to wait for the 1964 Ford sedan to pass. He saw headlights approach from the south, but the vehicle turned off of the highway. Deputy Steffins drove back to where he had last seen the vehicle, but could not find it. He notified the dispatcher that he was discontinuing his search and would return to his routine patrol in Livingston.

Between 2:46 and 2:54 a.m., Deputy Steffins responded to a shoplifting call and a domestic abuse call. While searching for one of the subjects involved in the domestic abuse, Deputy Steffins saw the unique, dark, 1964 Ford sedan. He pulled the vehicle over at 3:13 a.m., 38 minutes after he first saw the vehicle south of Livingston, and asked for registration, proof of insurance, and identification. Deputy Steffins asked Bauer, the car's driver, why he had turned off the highway and where he had gone. Bauer responded that he had gone to an old gravel pit. While talking to Bauer, Deputy Steffins noticed a strong smell of alcohol on Bauer's breath, that Bauer's eyes were bloodshot and glassy, and that Bauer's speech was very slow and deliberate.

Based on his observations of Bauer's driving and his observations of Bauer's condition, Deputy Steffins asked Bauer to perform some physical maneuvers. Bauer was not able to complete his ABC's, showed no elliptical movement in the Romberg test, and could not stand on one leg past the count of ten.

At 3:19 a.m., Deputy Steffins placed Bauer under arrest for operating a motor vehicle while under the influence of alcohol.

Deputy Steffins transported Bauer to the Park County jail and cited him for driving while under the influence of alcohol, night speeding, and not having proof of liability insurance. Deputy Steffins read Montana's Implied Consent Law to Bauer, yet Bauer refused to submit to a breathalyzer test. Deputy Steffins issued Bauer a 72-hour driving permit and released him on bail.

On January 25, 1995, the Montana Department of Justice issued its order suspending Bauer's driver's license. Bauer filed a petition for reinstatement of his driver's license on February 14, 1995, which the District Court for the Sixth Judicial District, Park County, denied. Bauer appeals the suspension of his driver's license and the District Court's order denying his petition to reinstate his driver's license.

## DISCUSSION

Did the arresting officer have reasonable grounds to believe that Bauer was driving under the influence of alcohol?

Bauer contends that at the moment of the arrest, Deputy Steffins did not have probable cause to stop Bauer and therefore did not have reasonable grounds to believe that Bauer had been driving or **was** in physical control of a vehicle while under the influence of alcohol. Specifically, Bauer claims that § 61-a-402, MCA, the Implied Consent Law, requires an officer to have reasonable grounds to believe that a driver of a motor vehicle is under the influence of alcohol before he can legally stop the driver and require the driver to submit to a breathalyzer test. Moreover, Bauer claims that under § 61-8-403, MCA, a driver who refuses to take a breathalyzer test under the Implied Consent Law,

can have his or her driving privileges restored where the officer did not have reasonable grounds to believe the accused was operating a motor vehicle under the influence of alcohol.

The standard of review of a district court's findings of fact is whether the findings are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (citing Columbia Grain Intern. v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). In Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287, we adopted a three-part test to determine if a finding of fact is clearly erroneous. If we determine that the finding is supported by substantial credible evidence and therefore meets the first prong of the test, the finding of fact is not clearly erroneous. We review conclusions of law to determine whether the district court's conclusions were correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

Title 61, chapter 8, part 4, MCA, covers driving under the influence of alcohol or drugs. Section 61-a-402, MCA, provides that any person who operates a motor vehicle on the ways of the state open to the public is deemed to have given consent to a chemical test to determine the alcoholic content of his or her blood. A person may refuse to submit to the chemical test, but if the person refuses to submit to the test, the arresting officer must seize his or her driver's license. Specifically, §§ 61-8-402 and 403, MCA, provide as follows:

> 61-E-402. Blood, breath, or urine tests. (1) A person who operates or is in actual physical control of

a vehicle upon ways of this state open to the public is considered to have given consent, subject to the provisions of 61-8-401, to a test or tests of the person's blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body if arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two. <u>The test or tests must be administered at the direction of a peace officer who has reasonable grounds to believe that the person has been driving or has been in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two.</u> . . . [Emphasis added.]

61-E-403. Right of appeal to court. (1) Within 30 days after notice of the right to a hearing has been given by a peace officer, a person may file a petition to challenge the license suspension or revocation . . .
(4) (a) The court shall take testimony and examine the facts of the case, except that the issues are limited to whether:
(i) a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two;
(ii) the person was placed under arrest; and
(iii) the person refused to submit to the test or tests.
(b) The court shall determine whether the petitioner is entitled to a license or whether the petitioner's license is subject to suspension or revocation.

In Jess v. State, Dept. of Justice, MVD (1992), 255 Mont. 254, 841 P.2d 1137, we addressed the issue of whether there was sufficient evidence in the record to support the trial court's conclusion that the arresting officer had reasonable grounds to suspect that the appellant had been driving under the influence of alcohol. In Jess, a witness followed the appellant for some distance and observed the appellant drive erratically and swerve across the center line. The witness notified the Columbus sheriff's office of appellant's driving and gave the officers the

6

license plate number and a description of the vehicle. An officer from the dispatch station located the vehicle outside of a bar. When the officer found the appellant, the appellant had bloodshot eyes, slurred speech, and was staggering. Jess, 841 P.2d at 1141.

In Jess, the appellant claimed that the officers did not have the requisite particularized suspicion to investigate him. Thus, this Court analyzed the issue of whether the arresting officer had reasonable grounds to suspect that the appellant had been driving under the influence of alcohol in terms of whether the arresting officer had a particularized suspicion to warrant an investigatory stop. We noted that "[i]n determining whether an officer is justified in making an investigatory stop, the State must prove the existence of a 'particularized suspicion.'" Jess, 841 P.2d at 1140 (citing Matter of Suspension of Driver's License of Blake (1986), 220 Mont. 27, 712 P.2d 1338). We concluded that although the officers did not see the appellant driving, the witness's information combined with the appellant's condition created sufficient evidence that the officer had reasonable grounds to suspect the appellant had been driving under the influence of alcohol and had reasonable grounds to detain him. Jess, 841 P.2d at 1141. We note that "reasonable grounds" provided for in §§ 61-8-402 and 403, MCA, and discussed in Jess is really the same test as "particularized suspicion" provided for in § 46-5-401, MCA, and discussed in State v. Reynolds (1995), -Mont. __, 899 P.2d 540, 541-42, 52 St.Rep. 600, 602.

We recently set forth an analysis of particularized suspicion for an investigative stop in Reynolds, 899 P.2d at 541-42. In Reynolds, we noted that the Montana Legislature amended § 46-5-401, MCA, the investigative stop statute, to comport with United States Supreme Court and Montana case law. Section 46-5-401, MCA, now supports an investigative stop on the basis that the arresting officer has a particularized suspicion that an offense has been committed. Section 46-5-401, MCA, provides:

> Investigative stop. In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense. [Emphasis added.]

When a police officer seizes a person, such as in a brief investigatory stop, the Fourth Amendment right against unreasonable searches and seizures applies. Reynolds, 899 P.2d at 542 (citing Terry v. Ohio (1968), 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 899). Recognizing that an investigatory stop must be justified by some objective manifestation that the person stopped is, has, or is about to be, engaged in criminal activity, the United States Supreme Court set forth, and this Court adopted, a two-part test to evaluate whether a police officer has sufficient cause to stop a person. United States v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621, 628; State v. Gopher (1981), 193 Mont. 189, 194, 631 P.2d 293, 296.

First, the state must show objective data from which an experienced officer can make certain inferences. Second, the state

must show a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing. _Gopher_, 631 P.2d at 296. In _Gopher_, we held that a particularized suspicion existed to justify stopping a vehicle that slowly drove past and exhibited unusual curiosity in the crime scene.

In _Reynolds_, this Court noted that the issue of whether or not a particularized suspicion existed in order to justify an investigatory stop is factually driven. _Reynolds_, 899 P.2d at 543. For example, in _Blake_, we held that a petitioner's exhibiting patterns consistent with a person driving while under the influence of alcohol by swerving into the other lane and driving in the vicinity of several bars at around 2:00 a.m., was sufficient to support a particularized suspicion that the petitioner may have been driving while under the influence of alcohol. _Blake_, 712 P.2d at 1341.

Similarly, in State v. Morsette (1982), 201 Mont. 233, 654 P.2d 503, the totality of the circumstances created a particularized suspicion justifying an investigatory stop. After being alerted that a nearby farm had been broken into, a neighbor saw an unfamiliar truck driving by the house very fast. Acting on the information from the neighbor, a deputy followed the tire tracks from the nearby farm to the truck that matched the neighbor's description. Although the deputy did not see the truck commit any traffic violations, nor did the deputy stop the truck immediately after the farm had been broken into, we nonetheless

held that the totality of the circumstances created a particularized suspicion. Morsette, 654 P.2d at 507.

When the totality of the circumstances does not create a particularized suspicion, we have held the investigatory stop to be unjustified. For example, in Grinde v. State (1991), 249 Mont. 77, 813 P.2d 473, we held that the squeal of tires alone did not justify an investigatory stop because the officer did not see any evidence of erratic driving. Similarly, in State v. Anderson (1993), 258 Mont. 510, 853 P.2d 1245, the facts were not sufficient for us to hold that there was a particularized suspicion warranting an investigative stop because the police had not seen the vehicle violate any traffic laws justifying a traffic stop.

In contrast, Deputy Steffins saw Bauer cross the center line and drive at a speed well over the speed limit. Pursuant to § 46-5-401, MCA, a peace officer may stop any vehicle observed in circumstances that create a particularized suspicion that the occupant in the vehicle has committed an offense. Clearly, observing the same dark, 1964 Ford sedan in Livingston that Deputy Steffins had seen crossing the center line, braking hard around corners, and speeding toward Livingston 38 minutes previously, suffices as a circumstance creating a particularized suspicion. The 38-minute time lapse did not vitiate Deputy Steffins' reasonable suspicion given the circumstances of the unique car, the time of day, and the prior traffic violations. Therefore, we conclude that, under the totality of the circumstances, the facts

10

in this case supported a particularized suspicion that Bauer had committed an offense.

If, after making a justified investigative stop, the police officer reasonably believed the driver to be under the influence of alcohol, he can make an arrest and require submission to a chemical test. Grinde, 813 P.2d at 476. In other words, "[a] founded suspicion to stop for investigative detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop." Jess, 841 P.2d at 1141. In Jess, we held that the arresting officers had probable cause to arrest the appellant based on their observations of appellant's behavior, such as the appellant's bloodshot eyes and slurred speech. Jess, 841 P.2d at 1141.

In the instant case, after stopping Bauer for an investigative stop, Deputy Steffins noticed the **smell** of alcohol on Bauer's breath, noticed that Bauer's eyes were bloodshot and glassy, and noticed that Bauer's speech was slow and deliberate. These were reasonable grounds for Deputy Steffins to ask Bauer to submit to physical maneuvers. After Bauer was not able to perform the physical maneuvers, Deputy Steffins reasonably asked Bauer to take a breathalyzer test which Bauer refused to do. Pursuant to § 61-8-402(3), MCA, Deputy Steffins seized Bauer's driver's license. After considering the relevant factors in § 61-a-403, MCA, the District Court appropriately denied Bauer's petition to reinstate his driver's license. Accordingly, we conclude that substantial

11

credible evidence supports the District Court's decision to deny Bauer's petition to reinstate his license.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

January 30, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Bruce Becker
Attorney At Law
Box 1113
Livingston MT 59047-1113

Hon. Joseph P. Mazurek, Attorney General
    , Assistant Attorney General
215 N. Sanders
Helena MT 59620

Tara Depuy, Park County Attorney
Kendra K. Anderson, Deputy
414 East Callender
Livingston MT 59047

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy