No. 95-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

BRIAN J. ANDERSON,

       Petitioner and Appellant,

  v.

STATE OF MONTANA, DEPARTMENT OF JUSTICE,
MOTOR VEHICLE DIVISION,

       Respondent and Respondent.

FILED

FEB 2⁊ 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                 In and for the County of Yellowstone,
                 The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

             Gary R. Thomas, Thomas Law Office,
             Red Lodge, Montana

       For Respondent:

             Hon. Joseph P. Mazurek, Attorney General,
             Patricia Jordan, Assistant Attorney General,
             Helena, Montana

             Alan Hall, Deputy City Attorney,
             Billings, Montana

Submitted on Briefs:  January 11, 1996

Decided:  February 22, 1996

Filed:

_____
              Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Brian Anderson petitioned the District Court for the Thirteenth Judicial District in Yellowstone County for reinstatement of his driver's license pursuant to § 61-8-403, MCA. Following a hearing, the District Court denied Anderson's petition. The court found that the arresting officer had reasonable grounds to believe that Anderson had committed the offense of driving under the influence of alcohol, and therefore, concluded that the officer's stop of Anderson was lawful. Anderson appeals the judgment of the District Court. We affirm the District Court.

There are two issues on appeal:

1.  Did the District Court err when it found that the officer had reasonable grounds to believe that Anderson had been driving while under the influence of alcohol?

2.  Did the District Court err when it concluded that the officer's initial detention of Anderson constituted an investigative stop rather than an arrest?

FACTUAL BACKGROUND

On January 17, 1995, between 1 a.m. and 2 a.m., Officer Sandra Leonard was on a routine patrol of the downtown area in Billings. As she approached the intersection of Montana Avenue and 28th Street, she observed a man walking across 28th Street toward a yellow 1980 Chevrolet Citation. The man, later identified as Brian Anderson, appeared to Officer Leonard to be having difficulty walking, and was "shuffling" and "stumbling" across the street.

2

Although Officer Leonard did not see Anderson get into the yellow Citation, she saw the vehicle driving south on 28th Street a few minutes later and positively identified the driver as the same person she had seen walking across the street. She followed the Citation for several blocks, and observed that Anderson failed to use his turn signal at every turn. Based on Anderson's driving behavior and on her own police training, Officer Leonard concluded that Anderson was attempting to elude her.

At one point, Anderson pulled into the "drive-through" of the Chinese Kitchen restaurant, which was closed at the time. Officer Leonard thought Anderson would turn into the alley, so she turned east and entered the alley between 28th Street and 29th Street. When she did not see the yellow Citation she turned out of the alley and parked at the corner of 2nd Avenue and 29th Street. As she sat in her car, she observed Anderson walking south on 29th Street in the same shuffling manner. Officer Leonard positively identified Anderson as the same man she had seen driving the yellow Citation.

At that point, Officer Leonard informed the dispatcher that she was going after a DUI suspect. Officer Leonard then got out of her patrol car and "loped across the street" toward Anderson. She testified that when she was ten to fifteen feet behind Anderson she could smell a "very strong odor of intoxicants." Officer Leonard told Anderson to stop because she needed to talk to him, but Anderson kept walking. She then approached Anderson from behind and applied a "gooseneck hold" on his left arm to detain him.

3

Anderson was not cooperative, and "borderline resist[ed]" Officer Leonard. As she was putting the hold on Anderson, Officer Leonard could smell a very strong odor of intoxicants coming from him. She walked Anderson back to her patrol car and told him he was under arrest.

Officer Leonard transported Anderson to the Yellowstone County Detention Center. She read Montana's Implied Consent Law to him, but he refused to submit to a breathalyzer test. Officer Leonard issued Anderson a citation for driving under the influence of alcohol in violation of § 61-8-401, MCA, and seized his Montana driver's license. The Department of Justice later issued an order suspending Anderson's driving privileges within the state of Montana.

On January 20, 1995, Anderson filed a petition for reinstatement of his driver's license. Following a hearing, the Thirteenth Judicial District Court found that Officer Leonard had reasonable grounds to believe that Anderson had been driving a vehicle while under the influence of alcohol. Based on that finding, the court denied Anderson's petition.

                              ISSUE 1

Did the District Court err when it found that Officer Leonard had reasonable grounds to believe that Anderson had been driving while under the influence of alcohol?

Our review of a district court's denial of a petition for reinstatement of a driver's license is two-fold. We review the court's findings of fact to determine whether they are clearly

4

erroneous. *In re Bauer* (Mont. 1996), 53 St. Rep. 65, 66. We then review the court's conclusions of law to determine whether they are correct. *Bauer*, 53 St. Rep. at 66.

Pursuant to § 61-8-403(4), MCA, the District Court's review of Anderson's petition for the reinstatement of his driver's license was limited to three issues: (1) whether Officer Leonard had reasonable grounds to believe that Anderson had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two; (2) whether Anderson was placed under arrest; and (3) whether Anderson refused to submit to a blood, breath, or urine test, as required by § 61-8-402, MCA. In this case, Anderson maintains only that Officer Leonard did not have reasonable grounds upon which to base her investigative stop. In particular, Anderson maintains that Officer Leonard lacked a "particularized suspicion of some kind of wrongdoing," and therefore, that her detention of Anderson was unlawful.

We have held that a finding of "reasonable grounds" to make an investigative stop, as required by § 61-8-403, MCA, is in effect, the equivalent of a finding of "particularized suspicion" to make an investigative stop, as set forth in § 46-5-401, MCA. *Bauer*, 53 St. Rep. at 67. Section 46-5-401, MCA, provides:

> In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, <u>a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of</u>

5

> the vehicle has committed, is committing, or is about to
> commit an offense.

(Emphasis added). The issue of whether a particularized suspicion existed is a question of fact which is dependent on the totality of the circumstances. *State v. Reynolds* (1995), 272 Mont. 46, 50, 899 P.2d 540, 542-43. Because an investigative stop must be justified by some objective manifestation that the person stopped might be engaged in some criminal activity, this Court has adopted a two-part test to determine whether an officer had sufficient cause to stop a person. *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293. First, the state must show objective data from which an experienced officer can make certain inferences. *Gopher*, 193 Mont. at 194, 631 P.2d at 296. Second, the state must demonstrate a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *Gopher*, 193 Mont. at 194, 631 P.2d at 296.

In *In re Blake* (1986), 220 Mont. 27, 712 P.2d 1338, we upheld a finding of particularized suspicion where a driver exhibited patterns of driving while under the influence of alcohol by swerving into the other lane and driving in the vicinity of several bars at around 2 a.m. More recently, in *Bauer*, 53 St. Rep. at 68, we agreed that particularized suspicion existed where a driver crossed the center line and braked hard around corners while exceeding the speed limit.

6

In this case, Officer Leonard observed Anderson shuffling and staggering toward his car between 1 a.m. and 2 a.m., just prior to the closing of the bars in downtown Billings. When she followed Anderson in his car, Leonard observed that Anderson employed what she interpreted as evasive driving tactics and failed to use his turn signal in violation of § 61-8-336, MCA. In addition, when Officer Leonard again spotted Anderson shuffling down the sidewalk and attempted to stop him, he failed to respond. At that time, Officer Leonard smelled a strong odor of intoxicants emanating from Anderson. Clearly the combination of Anderson's stumbling walk, his failure to use his turn signal, his failure to stop when requested to do so by a peace officer, and the smell of intoxicants coming from his person was sufficient to create a particularized suspicion that Anderson may have been driving while under the influence of alcohol. We therefore hold that the totality of the circumstances supports the District Court's finding that Officer Leonard had a particularized suspicion that Anderson had committed an offense, and therefore, that the court's finding that Officer Leonard had reasonable grounds to believe that Anderson had been driving under the influence of alcohol was not clearly erroneous.

ISSUE 2

Did the District Court err when it concluded that Officer Leonard's initial detention of Anderson constituted an investigative stop rather than an arrest?

Anderson contends that Officer Leonard's detention of him exceeded the lawful bounds of an investigative stop. Anderson

7

specifically maintains that the "gooseneck hold" was so intrusive that it constituted an arrest, and that Officer Leonard did not have probable cause to make an arrest at that time.

This Court has held that three elements must coexist before an arrest occurs: (1) authority to arrest, (2) assertion of that authority with intention to affect an arrest, and (3) restraint of the person arrested. *City of Billings v. Whalen* (1990), 242 Mont. 293, 297, 790 P.2d 471, 474.

In this case, although Officer Leonard clearly had the authority to arrest Anderson and did in fact restrain him, there is no support for the proposition that at the time she placed the "gooseneck hold" on him she had an intention to arrest him. In fact, Officer Leonard testified without contradiction that she did not intend to arrest him until he resisted her hold and she could clearly identify the odor of intoxicants coming from him. At that time, she walked Anderson to her patrol car and told him he was under arrest.

The fact that Officer Leonard's decision to arrest was made very soon after the investigative stop does not invalidate the stop, but in fact, furthers the intent of § 46-5-403, MCA, that "[a] stop . . . may not last longer than is necessary to effectuate the purpose of the stop." In addition, this Court has held that an officer who makes an investigative stop is not precluded from making an arrest based on observations made during the stop. As we stated in *Jess v. State* (1992), 255 Mont. 254, 261, 841 P.2d 1137, 1141,

8

"[a] founded suspicion to stop for investigative detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop." In *Jess*, we held that the arresting officers had probable cause to arrest after an investigative stop based on their observations of the driver's bloodshot eyes and slurred speech. *Jess*, 255 Mont. at 261, 841 P.2d at 1141.

In this case, Officer Leonard attempted to stop Anderson for questioning after observing several incidents which reasonably led her to suspect that Anderson had been driving while under the influence of alcohol. Only when Anderson resisted her verbal attempts to detain him did Officer Leonard apply the "gooseneck hold." At that point, when Anderson "borderline resisted" and when Officer Leonard could clearly smell the odor of intoxicants coming from him, her suspicions ripened into probable cause. Only then did she walk Anderson toward her patrol car and tell him he was under arrest. The use of the gooseneck hold was nothing more than a reasonable means of detaining Anderson during the execution of an investigative stop, and without more, did not elevate the stop into an arrest. *See, e.g., State v. Morsette* (1982), 201 Mont. 233, 243, 654 P.2d 503, 508 (holding that the officer's use of a shotgun to effectuate a stop "was fully justified . . . during the execution of the investigatory stop, for [the officer's] own protection").

We conclude that the District Court's finding that Officer Leonard's initial stop of Anderson was reasonable and was based on the necessary particularized suspicion of unlawful conduct was not

9

clearly erroneous. We conclude that Officer Leonard's initial detention constituted an investigative stop which led to further observations which established probable cause to arrest. Therefore, we affirm the District Court's denial of Anderson's petition for reinstatement of his driver's license.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

10