MARK A. RUPP,
Petitioner and Appellant,
v.
STATE OF MONTANA,
DEPARTMENT OF JUSTICE,
MOTOR VEHICLE DIVISION,
Respondent and Respondent.

No. 96-159.

Submitted on Briefs October 24, 1996.

Decided November 14, 1996.

Appeal from the District Court of Ravalli County.

Twenty-First Judicial District.

Honorable Jeffrey H. Langton, Judge.

Affirmed.

For Appellant: David E. Stenerson, Hamilton.

For Respondent: Joseph P. Mazurek, Attorney General, John Paulson, Assistant Attorney General, Helena; James A. Haynes, Hamilton City Attorney, T. Geoffrey Mahar, Deputy Hamilton City Attorney, Hamilton.

JUSTICE HUNT delivered the Opinion of the Court.

Appellant Mark A. Rupp (Rupp) appeals the decision of the Twenty-first Judicial District Court, Ravalli County, upholding the suspension of his driver's license pursuant to Sec. , MCA, the implied consent law. We affirm.

The sole issue presented on appeal is whether the District Court erred in finding that law enforcement had the necessary particularized suspicion to make a vehicle stop and to arrest Rupp for driving under the influence of alcohol.

On December 13, 1995, at approximately 11:40 pm, two Hamilton police officers were sitting in their patrol car observing the entrance to a particular bar in Hamilton. The officers were watching the bar because they had broken up a disturbance at that location earlier and suspected that the individual who caused the disturbance might attempt to return to the bar.

While watching the bar, the officers observed Rupp exit from the establishment and walk down the street. The officers noted that Rupp was unsteady on his feet, weaving and wobbling "all over the sidewalk." The officers agreed that Rupp appeared to be drunk. While the officers watched, Rupp continued down the street until he turned a corner and they lost sight of him.

The officers immediately started the patrol car and followed Rupp around the corner, a process the testifying officer estimated took five to ten seconds. When they turned the corner, they observed no pedestrians on the street and no vehicles moving, with the exception of a tan pickup parked close to the corner which they observed starting up. At that time, the officers effected a traffic stop of the pickup, of which Rupp was the driver.

The officers requested that Rupp perform a number of field sobriety tests, which he could not complete, and he was arrested for driving under the influence of alcohol. Rupp later refused to perform a breath test to determine his blood alcohol level, and, consequently, his driver's license was automatically suspended pursuant to Sec. , MCA, the implied consent law. Rupp appealed the suspension of his license, asserting that the officers had lacked reasonable grounds to effect the traffic stop of his vehicle. The District Court affirmed the driver's license suspension and Rupp appeals.

This Court's review of a district court's denial of a petition to reinstate a driver's license is two-fold. We review the court's findings of fact to determine whether they are clearly erroneous, and we review the court's conclusions of law to determine whether they are correct. Anderson v. State of Montana, Department of Justice, Motor Vehicle Division (1996), 912 P.2d 212, 214 (citing In re Bauer v. State (1996), 910 P.2d 886, 887).

Section , MCA, is the statutory provision commonly called the implied consent law. Essentially, the implied consent law provides that:

> an individual who is arrested for operating a motor vehicle while under the influence of alcohol is deemed to have given his consent to a chemical test for the purpose of determining the alcoholic content of his blood.
>
> Refusal to submit to a chemical test results in immediate seizure of the individual's driver's license and formal suspension of the driving privilege by the Department of Justice.

In re Gebhardt v. State (1989), 775 P.2d 1261, 1264. A driver whose license is automatically suspended has the right to contest the validity of the suspension at a hearing before the district court. Section (1), MCA.

However, the district court's evaluation of the propriety of the driver's license suspension is not all-encompassing:

> The court shall take testimony and examine the facts of the case, except that the issues are limited to whether:

(i) a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two;

(ii) the person was placed under arrest; and

(iii) the person refused to submit to the test or tests.

Section (4)(a), MCA.

We have stated that "[a] finding of `reasonable grounds' to make an investigative stop, as required by Sec. (4)(a)(i), MCA, is the equivalent of a finding of `particularized suspicion' to make an investigative stop under Sec. , MCA." Seyferth v. State of Montana, Department of Justice, Motor Vehicle Division (1996), 922 P.2d 494, 498 (citing Anderson, 912 P.2d at 214). Section , MCA, provides:

[i]n order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Section , MCA.

The issue of whether the particularized suspicion mandated by Sec. , MCA, exists is a question of fact which is dependent on the totality of the circumstances comprising the incident in question. Anderson, 912 P.2d at 214 (citing State v. Reynolds (1995), 899 P.2d 540, 542-43). Further, "[b]ecause the statute requires some objective manifestation that a person is engaged in criminal activity before a stop can be made, we adopted a two-part test to determine whether an officer had sufficient cause to stop a person." Seyferth, 922 P.2d at 498. Under this two-part test, the State must show both objective data from which an experienced officer can make certain inferences, and a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. Seyferth, 922 P.2d at 498. See also State v. Gopher (1981), 631 P.2d 293, 296; Armstrong v. State of Montana, Department of Justice (1990), 800 P.2d 172, 174; Jess v. State of Montana, Department of Justice, Motor Vehicle Division (1992), 841 P.2d 1137, 1140-41; Anderson, 912 P.2d at 214.

In this case, it is undisputed that Rupp was placed under arrest and that he refused to submit to a blood-alcohol measuring test. However, Rupp argues that the suspension of his license was nevertheless unlawful because the officer who arrested him did not have the requisite particularized suspicion to believe that he was in physical control of his vehicle while under the influence of alcohol. Specifically, Rupp argues that, while the officers may have seen him walk down the street, they then lost sight of him and, consequently, did not see him enter his vehicle. Therefore, he argues, they did not have a

particularized suspicion to stop the pickup because they could not know for certain that he was the driver and, further, the "unknown" pickup driver had not violated any law of this State. Rupp argues that the only data the officers had was purely subjective--the assumption that Rupp's staggering meant he was drunk and the assumption that the pickup driver was in fact Rupp. This, Rupp contends, falls short of the objective data necessary under to first part of the "particularized suspicion" test.

We disagree. It is obvious that the officers could not know with absolute certainty that Rupp was intoxicated, simply from watching him walk down the street. But absolute certainty is not required. The State need only establish the existence of a particularized suspicion which is supported by "objective data from which an experienced officer can make certain inferences." Such objective data includes seeing Rupp exit from a bar and watching him stagger down the street. One does not even have to be an experienced police officer to infer from such data that the individual in question is likely to be under the influence of alcohol.

Nor does the fact that Rupp disappeared from the officers' view for five to ten seconds fatally undermine their determination that he had entered and started the tan truck. Again, objective data existed which would support the inference that the individual whom they had observed on the street ten seconds earlier must have climbed into the truck. This objective data included the following facts: Rupp had disappeared from the sidewalk where he had been observed just seconds before; no other persons were observed on the street; no other vehicles were observed starting or moving on the street; and the position of the pickup would allow an individual to enter it in the short time Rupp was out of sight.

Rupp argues that, in theory, he could have "entered an alleyway, entered a building, entered another vehicle, or simply disappeared into the darkness." We will grant that, in theory, such occurrences are possible. But again, the law enforcement officers did not need absolute certain knowledge in order to effect the stop. Rather, they needed a particularized suspicion which was supported by objective data sufficient to support the experienced officers' inference. Here, the officers inferred that the intoxicated pedestrian had entered the truck in question and was preparing to drive away. Such an inference was reasonable under the facts of this case, and the District Court did not err in so finding.

Affirmed.

JUSTICES NELSON, GRAY, TRIEWEILER and ERDMANN concur.