No. 00-557

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 36

PHILLIP KLEINSASSER,

    Petitioner and Appellant,

v.

STATE OF MONTANA,

    Respondent and Respondent.

FILED

FEB 2 8 2002

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

STATE LAW LIBRARY
FEB 2 8 2002
OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Channing Hartelius, Great Falls, Montana

    For Respondent:

        Brant Light, Cascade County Attorney, Marvin Anderson, Deputy Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: December 28, 2001

Decided: February 28, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Phillip Kleinsasser appeals from the Findings of Fact, Conclusions of Law and Order entered by the District Court for the Eighth Judicial District, Cascade County, denying his petition to reinstate his driver's license. We reverse.

¶2    We address the following issue on appeal: Whether the District Court erred in concluding that Officer Leasure had objective data from which he could form a particularized suspicion that Kleinsasser or an occupant of his vehicle was engaged in wrongdoing thus justifying an investigative stop.

**Factual and Procedural Background**

¶3    Many of the facts in this case are undisputed. On November 16, 1999, at approximately 9:48 p.m., Kleinsasser's vehicle was parallel parked in a legal manner, with its lights on, off the right side of the Vaughan Frontage Road outside Great Falls, Montana. Cascade County Sheriff's Deputy Troy Leasure, accompanied by Reserve Sheriff's Deputy Travis Palmer, was returning to Great Falls from Sun Prairie in his patrol car. Officers Leasure and Palmer came upon Kleinsasser's vehicle from behind. As they passed the vehicle, the officers observed a man standing beside the passenger door of the vehicle on the side furthest from the road. The man appeared to be urinating. Officer Palmer later testified that he observed a stream of fluid for a brief second, but the individual had taken steps so as not to expose himself to passers-by.

2

¶4     Officer Leasure continued on for about one-half mile before deciding to turn around to warn the individual about the impropriety of his conduct or, as Officer Leasure later testified, "to give him a good tongue lashing." Upon reaching the vehicle, there was no longer anyone standing near it. The officers observed that Kleinsasser was seated in the driver's seat of the vehicle and that he was making a call on his cellular phone. They also observed that an individual was seated in the front passenger seat of the vehicle and another individual was lying down on the back seat.

¶5     When Kleinsasser rolled down his driver's side window to speak to Officer Leasure, Officer Leasure noticed the odor of alcohol emanating from inside the vehicle. Officer Leasure questioned Kleinsasser and the other two men in the vehicle about the identity of the man who had been standing outside. All three denied standing by the vehicle and also denied knowing who had been doing so.

¶6     After further conversation, Officer Leasure asked Kleinsasser to exit the vehicle and observed that Kleinsasser had a hard time keeping his balance. Officer Leasure had Kleinsasser perform field sobriety tests, which Kleinsasser failed. Officer Leasure requested Kleinsasser take a preliminary breath test, which Kleinsasser refused. Consequently, Officer Leasure arrested Kleinsasser for driving under the influence of alcohol. After the officers transported Kleinsasser to the detention center, Kleinsasser once again refused to provide a breath sample and his driver's license was seized and suspended.

3

¶7 Kleinsasser challenged the license suspension pursuant to § 61-8-403, MCA, asserting that Officer Leasure illegally seized his license. Discovery ensued and the depositions of Officers Leasure and Palmer were filed. Officers Leasure and Palmer also testified at the June 30, 2000 hearing on Kleinsasser's petition challenging the suspension. Thereafter, the District Court entered its Findings of Fact, Conclusions of Law and Order denying Kleinsasser's petition. Kleinsasser appeals.

**Discussion**

¶8 *Whether the District Court erred in concluding that Officer Leasure had objective data from which he could form a particularized suspicion that Kleinsasser or an occupant of his vehicle was engaged in wrongdoing thus justifying an investigative stop.*

¶9 We review a district court's findings of fact on the denial of a petition for reinstatement of a driver's license to determine whether those findings are clearly erroneous. *Anderson v. State, Dept. of Justice* (1996), 275 Mont. 259, 262, 912 P.2d 212, 214 (citing *Bauer v. State* (1996), 275 Mont. 119, 122, 910 P.2d 886, 888). We then review the court's conclusions of law to determine whether they are correct. *Anderson*, 275 Mont. at 262, 912 P.2d at 214.

¶10 "Because a presumption of correctness attaches to the State's act of suspending or revoking a driver's license, the driver bears the burden of proving that the suspension or revocation of a driver's license was improper." *Hulse v. State, Dept. of Justice*, 1998 MT 108, ¶ 14, 289 Mont. 1, ¶ 14, 961 P.2d 75, ¶ 14 (citing *Jess v. State Dept. of Justice* (1992), 255 Mont. 254, 259-60, 841 P.2d 1137, 1140 overruled on other grounds by *Bush v. State*,

4

*Dept. of Justice*, 1998 MT 270, 291 Mont. 359, 968 P.2d 716). Furthermore, a district court may consider only a limited number of issues in a driver's license reinstatement proceeding. Section 61-8-403(4)(a) & (b), MCA. Insofar as is relevant in the present case, the only issue under consideration was whether Officer Leasure "had reasonable grounds to believe" that Kleinsasser "had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two." Section 61-8-403(4)(a)(i), MCA.

¶11    The "reasonable grounds" requirement contained in § 61-8-403(4)(a)(i), MCA, is the equivalent of "particularized suspicion" as defined in § 46-5-401, MCA. *Hulse,* ¶ 12 (citing *Seyferth v. State, Dept. of Justice* (1996), 277 Mont. 377, 384, 922 P.2d 494, 498; *Anderson,* 275 Mont. at 263, 912 P.2d at 214). Section 46-5-401, MCA, provides:

> **Investigative stop.** In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that *the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.* [Emphasis added.]

¶12    This statute was amended in 1991 to reflect our holding in *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293, wherein we adopted the two-part test enunciated by the United States Supreme Court in *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, to evaluate whether a law enforcement officer has sufficient cause or a "particularized suspicion" to stop a person. We held in *Gopher* that in asserting that a law enforcement officer had the particularized suspicion to make an investigatory stop, the State

5

has the burden to show: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *Gopher*, 193 Mont. at 194, 631 P.2d at 296.

¶13 A determination of whether particularized suspicion exists is a question of fact dependent on the totality of the circumstances. *Hulse*, ¶ 12 (citing *Anderson*, 275 Mont. at 263, 912 P.2d at 214; *State v. Reynolds* (1995), 272 Mont. 46, 50, 899 P.2d 540, 542-43). "In evaluating the totality of the circumstances, a court should consider the quantity, or content, and quality, or degree of reliability, of the information available to the officer." *State v. Pratt* (1997), 286 Mont. 156, 161, 951 P.2d 37, 40 (citing *Alabama v. White* (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301). When the totality of the circumstances does not support a particularized suspicion, the investigatory stop is not justified. *Reynolds*, 272 Mont. at 50, 899 P.2d at 543.

¶14 Kleinsasser asserts that an investigative stop of his vehicle was not justified in this case because the officers lacked sufficient data from which they could conclude that the person they observed on the side of the road was an occupant of Kleinsasser's vehicle. Both officers testified that they did not observe anyone entering or exiting Kleinsasser's vehicle at any time. The officers merely observed that there was an individual on the side of the road when they originally proceeded past Kleinsasser's vehicle and that upon returning to that location, the individual that the officers had observed earlier was no longer there. The

6

officers assumed that this individual was an occupant of Kleinsasser's vehicle, yet they were unable to determine which of the occupants of the vehicle, if any, was the individual they had observed on the side of the road.

¶15 Kleinsasser also argues that to justify an investigative stop under § 46-5-401, MCA, the facts must demonstrate that the observed behavior was a violation of the laws of Montana. To that end, the State argues that the observed behavior was a violation of § 45-8-101, MCA, the statute defining disorderly conduct. Section 45-8-101, MCA, provides, in pertinent part, as follows:

> **Disorderly conduct.** (1) A person commits the offense of disorderly conduct if he knowingly disturbs the peace by:
> . . .
> (i) *creating a hazardous or physically offensive condition by any act that serves no legitimate purpose;* . . . [Emphasis added.]

¶16 First, we agree with Kleinsasser's assertion that this behavior did not create a hazardous condition. Despite the State's allegation that a driver passing by the area may have been distracted by the activities of the individual on the roadside, any possible distraction would be minimal given the time of night and the steps taken by the individual to conceal himself.

¶17 Second, we disagree with the State's assertion that the act served no legitimate purpose. It is hard to imagine any act which serves a more legitimate purpose than to have to answer nature's call. Unfortunately, it sometimes happens that that call comes at a time when we are far removed from the proper facilities. Officer Leasure himself testified that

7

he had, on occasion, been placed in the same position and that he was forced to act in the same manner as the individual here.

¶18 Third, while the act may be physically offensive to many, Officer Leasure testified that where the act is performed would play a large part in whether or not it was illegal. The State points to two cases wherein the individuals involved were cited for disorderly conduct for urinating in public. In the first case, the individual was cited for urinating in the 1800 block of Tenth Avenue South within the Great Falls city limits, near a busy, well-lighted street. In the second case, the individual was cited for urinating on a bench in the Cascade County Adult Detention Center.

¶19 The Criminal Law Commission (CLC) comments to § 45-8-101, MCA, provide the following analysis of the conduct comprising a violation of this statute:

> The crime of disorderly conduct appears to be directed at curtailing that kind of behavior which disrupts and disturbs the peace and quiet of the community by various kinds of annoyances. These acts standing alone may not be criminal under other categories such as theft, or assault and battery, or libel, etc. The difficulty is in defining the conduct which falls within these objectives, *for a given act under some circumstances is not objectionable, while under others it is.* Thus sounding a horn at a carnival is not objectionable. But sounding it at midnight in a residential section might be.
>
> The intent of the provision is to use somewhat broad, general terms to establish a foundation for the offense and leave the application to the facts of a particular case. Two important qualifications are specified in making the application, however. First, the offender must knowingly make a disturbance of the enumerated kind, and *second, the behavior must disturb "others." It is not sufficient that a single person or a very few persons have grounds for complaint.* [Emphasis added.]

Unlike the facts in the case before us on appeal, in both of the cases relied upon by the State the behavior was done in very public places and could conceivably be considered to have disturbed "others."

¶20 Indeed, our review of the CLC comments to § 45-8-101, MCA, leads us to conclude that when a Big Sky motorist is faced with the burning question: "To pee, or not to pee," the answer must depend upon the place, time of day, traffic, and other circumstances. The wrong answer--dictated though it may be by a need subordinate only to drawing one's next breath-- may turn a legitimate act into a criminal one.

¶21 In the present case, the incident occurred in the dark of the night, in a rural location where, as Officer Palmer testified, there were no overhead lights of any kind and there was no other traffic around at the time. Moreover, there was no evidence that the behavior disturbed anyone other than Officers Leasure and Palmer, and neither officer was so disturbed by the behavior that they considered giving the individual a citation. In fact, Officer Palmer testified that he observed nothing of an illegal nature that required immediate attention and Officer Leasure testified that, even though he turned his patrol car around to return to the scene, he had no intention to investigate any illegal activity.

¶22 Therefore, we conclude that the District Court's determination that the initial stop of Kleinsasser's vehicle was justified by particular suspicion is not supported by substantial evidence and is clearly erroneous. Because Officer Leasure did not have particularized suspicion to justify an investigative stop of Kleinsasser's vehicle, the subsequent seizure of

9

Kleinsasser's driver's license was invalid. Thus, we hold that the District Court erred in denying Kleinsasser's petition to reinstate his driver's license.

¶23    Reversed.

_____
                                    Justice

We Concur:

_____
                Chief Justice

_____

_____

_____

_____
                Justices

10

Chief Justice Karla M. Gray, dissenting.

¶24 I respectfully dissent from the Court's opinion which, in my view, turns "particularized suspicion" on its head by requiring law enforcement officers to *know*, both in fact and under the law, that an offense has been committed prior to making an investigative stop. I cannot agree, and I would affirm the District Court.

¶25 Notwithstanding that the ultimate issue in the District Court was whether Officer Leasure had particularized suspicion or reasonable grounds to believe Kleinsasser had been driving or was in physical control of a vehicle upon a public way while under the influence of alcohol, the dispositive question in both that court and on appeal is whether Officer Leasure had a particularized suspicion to make an investigatory stop of Kleinsasser's vehicle in the first instance. The trial court found that he did and that, having properly returned to the vehicle, subsequent events properly gave rise to Kleinsasser's arrest for DUI and the State's revocation of his driver's license. Under the applicable statute and our case law, it is my view that the District Court was correct.

¶26 I join the Court in focusing first on the portion of § 46-5-401, MCA, which authorizes an officer to stop a person or vehicle observed in circumstances creating a particularized suspicion that the person or occupant of the vehicle has committed or is committing an offense. I also join in the Court's statement of our two-part test for particularized suspicion, which requires the State to show objective data from which an experienced officer can make certain inferences and a resulting suspicion that the occupant of a vehicle is or has been engaged in wrongdoing. *See Gopher*, 193 Mont. at 194, 631 P.2d at 296. Moreover, it is

11

important to recognize that the particularized suspicion necessary for an investigative stop is a less stringent standard to meet than the probable cause standard (*see State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, ¶ 12, 965 P.2d 231, ¶ 12 (citation omitted)). In turn, of course, probable cause is a lesser standard than the State's beyond a reasonable doubt burden in proving that a criminal offense was committed. Unfortunately, the Court fails to properly apply these principles in the present case.

¶27 Instead, the Court begins by suggesting, but not concluding, that the officers lacked sufficient objective data from which to conclude that the person they observed on the side of the road was an occupant of Kleinsasser's vehicle. To the extent this section of the Court's opinion is intended to buttress the Court's later discussion and conclusions, I submit it is incorrect.

¶28 First, it is undisputed that the person the officers observed was urinating behind or beside the door of Kleinsasser's vehicle. Second, there is no suggestion that other persons were in the vicinity on foot at approximately 9:30 in the evening; nor does the record reflect the existence of another parked vehicle nearby from which the person at issue could have exited and re-entered after urinating beside Kleinsasser's vehicle. Third, the time lapse between the officers' observations and their return to the vehicle was minimal. The fact that the person was no longer outside the vehicle in the location where the urinating occurred does not negate the objective data that a man was observed urinating immediately next to the Kleinsasser vehicle, especially in light of the fact that there were three males in the vehicle upon the officers' arrival there. Finally, in this regard, the Court's reliance on the fact that

12

the officers were unable to identify one of the occupants of the vehicle as the urinater, after the "stop" occurred and because the occupants simply denied having committed that act, is totally improper. The question is whether objective data existed *prior* to the stop upon which the officers reasonably relied in making contact with the occupants of the vehicle. Under the circumstances here, it clearly did.

¶29 More important, however, and far more dangerous for the future of law enforcement's ability to protect Montanans, is the Court's implicit adoption of Kleinsasser's argument that the "facts" must "demonstrate" that the observed behavior was a violation of the law before an investigative stop can be justified. The question of whether an offense occurred is not for this Court or the District Court to resolve in the context of a proceeding over a driver's license suspension. If an offense is charged, that question is for the finder of fact.

¶30 The question before us here is whether urinating beside a road or in any other public place can constitute the criminal offense of disorderly conduct. The Court determines that it can, and I agree. Having so concluded, it is my opinion that the particularized suspicion issue is largely resolved. Based on their personal observations and the inferences properly drawn therefrom, the officers had a particularized suspicion that an occupant of Kleinsasser's vehicle had committed the offense of disorderly conduct. Nothing more was required to make the stop of the vehicle.

¶31 Particularized suspicion does not turn on whether a charge is subsequently filed or on whether the State could prove beyond a reasonable doubt in a criminal trial that, given the time, place and circumstances, the offense had been committed. In that regard, the Court's

13

reliance on the comments of the Criminal Law Commission to the statute defining the offense of disorderly conduct have no relevance here; those comments go to matters concerning charging and proving the offense. Thus, the questions on which the Court focuses--whether an occupant of the Kleinsasser vehicle actually created a physically offensive condition that served no legitimate purpose--have no place in our consideration of the present case.

¶32 We all agree that urinating in a public place can constitute the criminal offense of disorderly conduct. Because the officers observed such conduct in this case, I would conclude that the District Court properly determined the officers had a particularized suspicion to stop the Kleinsasser vehicle on the basis that an occupant had committed a criminal offense. While it is easy to be amused over the "to pee or not to pee" language used by the Court and, as a result, to underestimate the consequences of the Court's decision here, I am greatly concerned about where the Court's holding in this case will lead us, that is, what effect it will have on law enforcement's ability to make investigatory stops in future cases involving particularized suspicion that *other* offenses are being or have been committed. If a law enforcement officer must be able to *prove* that an offense has been committed before making an investigative stop, the applicable statute has been judicially repealed and *Gopher* has been effectively overruled. I simply cannot agree.

¶33 I dissent.

Chief Justice

14