JUSTICE GRAY
delivered the Opinion of the Court.
Joseph Broken Rope, Jr. (Broken Rope) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on his guilty pleas to charges of carrying a concealed weapon, criminal possession of dangerous drugs and criminal possession of drug paraphernalia, having reserved the right to appeal the court’s denial of his motion to suppress. We reverse and remand.
The dispositive issue on appeal is whether the District Court erred in finding that a particularized suspicion existed to justify an investigative stop of Broken Rope under § 46-5-401, MCA.
The following facts are undisputed. On March 21,1995, at approximately 1:00 a.m., Deputy Kevin Evans (Evans) of the Yellowstone County Sheriff’s office was on patrol near the Lockwood Kwik Way convenience store in Billings, Montana. He observed a vehicle occupied by two individuals, later identified as Elton Belgarde (Belgarde) and Broken Rope, traveling west on Highway 87 East. Evans ran the vehicle’s license number through a records check which revealed that the vehicle was registered to Belgarde and that a warrant had been issued for his arrest for fish and game violations.
When Belgarde and Broken Rope arrived at the Kwik Way, they left the vehicle and went inside the store. Evans watched the two men from his patrol car, planning to wait until they were back in their *429 vehicle before approaching them. Belgarde and Broken Rope exited the store after a short time. When they noticed Evans, they began using the telephone, moving around in the store’s parking lot, and staring at Evans. Evans decided that Belgarde and Broken Rope were not going to get back into Belgarde’s vehicle while he was present, so he radioed his backup, Deputy M. J. Mullikin (Mullikin), for assistance.
When Belgarde and Broken Rope saw Evans and Mullikin drive into the immediate area, they began putting their hands into their pockets. The deputies told them to keep their hands out of their pockets and, when Broken Rope attempted a second time to put his hands into his pockets, the deputies told him again to keep his hands out of his pockets. Evans then arrested Belgarde on the outstanding fish and game warrant.
Mullikin frisked Broken Rope and asked him if he had any weapons, knives or needles on his person. Broken Rope said that he had a knife in his belt. In addition to the knife, Mullikin found a .38 caliber Smith & Wesson handgun in Broken Rope’s waistband under his shirt. When asked about additional weapons or drugs, Broken Rope said that he had some marijuana in his pants pocket. Mullikin searched Broken Rope a second time and felt a hard object in Broken Rope’s pants pocket which Broken Rope identified as a marijuana pipe. Evans also searched Broken Rope and, in addition to the marijuana pipe containing suspected marijuana residue, he found a black canister containing a white powdery substance in Broken Rope’s other pants pocket. Broken Rope was taken to the Yellowstone County detention facility and booked. Evans then removed the back seat of his patrol car and found a baggie containing a rock-like substance under where Broken Rope had been sitting.
The State of Montana (State) charged Broken Rope by information with the felony offenses of carrying a concealed weapon and criminal possession of dangerous drugs, and the misdemeanor offense of criminal possession of drug paraphernalia. After pleading not guilty, Broken Rope moved to suppress the evidence seized by the deputies. The parties agreed that the District Court could decide the issue without a hearing, and the court subsequently denied Broken Rope’s motion.
Broken Rope later pled guilty to the charged offenses, reserving the right to appeal the court’s denial of his motion to suppress. The District Court entered judgment and sentence and Broken Rope appealed. The court and the parties filed an “Agreed Statement of Facts for Record on Appeal” pursuant to Rule 9(e), M.R.App.P.
*430 Did the District Court err in finding that a particularized suspicion existed to justify an investigative stop of Broken Rope under § 46-5-401, MCA?
In denying Broken Rope’s motion to suppress, the District Court found that Evans had a particularized suspicion, based on his training and experience as a peace officer and Broken Rope’s actions, that Broken Rope had been or was engaged in criminal activity. On that basis, the District Court concluded that the investigative stop and search of Broken Rope was justified and denied the motion to suppress.
Broken Rope contends that the District Court’s finding regarding Evans’ particularized suspicion to justify the investigative stop pursuant to § 46-5-401, MCA, is clearly erroneous and, therefore, that the court erred as a matter of law in applying the statute and denying his motion to suppress. We review such findings of fact by a district court to determine whether they are clearly erroneous; we review a district court’s conclusions of law to determine whether they are correct. See Bauer v. State (1996), 275 Mont. 119, 122, 910 P.2d 886, 888; State v. Williams (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021 (citing State v. Flack (1993), 260 Mont. 181, 188, 860 P.2d 89, 94).
When a law enforcement officer seizes a person, such as in an investigative stop, the right against unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution applies. Bauer, 910 P.2d at 889. As a result, the Montana legislature amended Montana’s investigative stop statute in 1991 to conform with both United States Supreme Court and Montana Supreme Court case law on that subject. State v. Reynolds (1995), 272 Mont. 46, 49, 899 P.2d 540, 542. Section 46-5-401, MCA, provides:
Investigative stop. In order to obtain or verify an account of the person’s presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.
(Emphasis added.)
In light of the requirement that some objective manifestation must exist to support a particularized suspicion that a person is engaged in criminal activity before a stop can be made, we have adopted a two-part test to determine whether an officer had sufficient cause to stop a person. Anderson v. State Dept. of Justice (1996), 275 Mont. 259, 263, 912 P.2d 212, 214 (citing State v. Gopher (1981), 193 *431 Mont. 189, 631 P.2d 293). First, the State must establish objective data from which an experienced officer can make certain inferences. Second, the State must show a resulting suspicion that the person is, or has been, engaged in wrongdoing or was a witness to criminal activity. Anderson, 912 P.2d at 214. Whether a particularized suspicion exists is a question of fact which is dependent on the totality of the circumstances. Anderson, 912 P.2d at 214 (citing Reynolds, 899 P.2d at 542-43).
The initial, and primary, thrust of the analysis is whether objective data existed from which an experienced officer could conclude that the person stopped is, or has been, engaged in criminal activity. In Bauer, for example, the deputy observed Bauer driving well over the speed limit, crossing the center line more than once and braking hard around curves. Bauer, 910 P.2d at 887, 890. We concluded that, under the totality of the circumstances, the evidence supported the deputy’s particularized suspicion that Bauer had committed an offense. Bauer, 910 P.2d at 890.
Similarly, in Anderson, the officer testified that she saw Anderson shuffle and stumble toward his car between 1:00 a.m. and 2:00 a.m. and fail to use his vehicle’s turn signals at every turn for several blocks; in addition, he did not stop when she asked him to. Anderson, 912 P.2d at 213. The officer also testified that, even from ten to fifteen feet away, she could smell a very strong odor of intoxicants emanating from Anderson. Anderson, 912 P.2d at 213. Those facts were sufficient, under the totality of the circumstances, to support the officer’s particularized suspicion that Anderson had committed the offense of driving under the influence of alcohol. Anderson, 912 P.2d at 215.
In other cases, however, this Court has held, under the totality of the circumstances, that the evidence did not support a particularized suspicion that the person stopped had committed, or was committing, an offense. In Reynolds, the deputy sheriff testified that he observed a pickup moving through an intersection “bordering on traveling too fast” for the conditions and hesitating seven to ten seconds at the intersection where the deputy was waiting, but that the driver had not necessarily violated the law. Reynolds, 899 P.2d at 542-43. Other than those observations, the deputy did not see any violations of the law and Reynolds did not exhibit behavior consistent with a person driving while under the influence of alcohol. Reynolds, 899 P.2d at 543. We concluded that, under the totality of the circumstances, a possible traffic violation — in the absence of any other objective evidence of criminal activity — did not support a particularized suspicion *432 that Reynolds had been engaged in wrongdoing. Reynolds, 899 P.2d at 543. On that basis, we held that the investigative stop was not justified under § 46-5-401, MCA. Reynolds, 899 P.2d at 543.
In the present case, the objective data Evans observed was Broken Rope entering and leaving the Kwik Way at approximately 1:00 a.m., using the telephone, moving around in the Kwik Way parking lot, putting his hands in his pockets, and staring at Evans. These actions do not support a particularized suspicion that Broken Rope was, or had been, engaged in criminal activity.
The State contends that Evans and Mullikin also relied on the existence of an outstanding warrant for “one of the men” as objective data supporting their investigative stop and search of Broken Rope. However, the undisputed fact is that the warrant for fish and game violations was for Belgarde, not for Broken Rope. The State cites to no authority under which a person merely being in the company of someone for whom an arrest warrant has been issued is sufficient— on either a stand-alone basis or in conjunction with objective data of the type that existed in this case — to create a particularized suspicion that that person had committed, or was committing, an offense so as to justify an investigative stop.
The State also contends that the deputies could draw upon their training and experience as peace officers to conclude that Belgarde and Broken Rope were acting in a suspicious and nervous manner, thereby justifying an investigative stop. At the outset, we observe that the agreed facts before us contain no information about the deputies’ training and experience or how such training and experience could lead them to conclude that Belgarde and Broken Rope’s activities were “suspicious” and “nervous.” Indeed, no agreed fact states that the deputies reached such a conclusion.
Moreover, there is nothing inherently suspicious about Broken Rope using a pay telephone, moving around in a convenience store parking lot, putting his hands in his pockets or staring at a sheriff’s deputy. As to whether these activities were “nervous,” many law-abiding citizens may well be nervous when their activities are being watched by law enforcement officers. On this record, Broken Rope’s actions did not form the basis for inferences resulting in a particularized suspicion that Broken Rope was, or had been, engaged in criminal activity.
We conclude that, under the totality of the circumstances, the record is insufficient to support the District Court’s finding that Evans had a particularized suspicion that Broken Rope was engaged *433 in criminal activity; therefore, the court’s finding is clearly erroneous. On that basis, we further conclude that the District Court erred in determining that the investigative stop of Broken Rope was justified pursuant to § 46-5-401, MCA.
The remainder of the State’s arguments relate to the officers’ entitlement to “frisk” a person and seize certain objects pursuant to § 46-5-402, MCA. According to the State, however, § 46-5-402, MCA, applies “[o]nce a peace officer has lawfully stopped a person under § 46-5-401 ....” Based on our conclusions that no particularized suspicion existed and that the investigative stop of Broken Rope was not justified under § 46-5-401, MCA, we need not address the remainder of the State’s arguments.
We hold that the District Court erred in denying Broken Rope’s motion to suppress.
Reversed and remanded for further proceedings consistent with this opinion.
JUSTICES TRIEWEILER, HUNT and NELSON concur.