No. 02-152

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 282

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

MATTHEW NILES,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                       In and for the County of Flathead,
                       The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Daniel R. Wilson, Measure & Wilson, P.C., Kalispell, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Carol E. Schmidt,
            Assistant Attorney General, Helena, Montana

            Sean Frampton, City Attorney, Whitefish, Montana

Submitted on Briefs:  July 25, 2002

Decided:  December 10, 2002

Filed:

_____
                          Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Defendant, Matthew Niles, was charged in Whitefish City Court with obstructing a police officer and being a minor in possession of alcohol.  Niles moved to suppress evidence gathered following his detention and arrest on grounds that the arresting officer had insufficient particularized suspicion to detain him.  The City Court denied Niles' motion to suppress.  Niles appealed the City Court's decision to the District Court where the City Court's decision was affirmed.  Niles appeals the order of the District Court.  We affirm the District Court.

¶2    The sole issue on appeal is whether the District Court erred when it concluded that the arresting police officer had a particularized suspicion to detain Niles.

FACTUAL AND PROCEDURAL BACKGROUND

¶3    On January 30, 2001, a convenience store clerk called Whitefish police to report that two young men had walked out of the store and that one of the young men had something hidden under his coat-possibly alcoholic beverages.  The clerk described the men as 18 or 19 years old, and wearing snowboarding gear and beanie-type hats.  Niles was 18 years old but not wearing the described clothing.  Police Officer Geno Cook drove to the store and identified three young men in an alley near the store, two of whom matched the clerk's description.  Cook pulled his patrol car near one of the men described by the clerk and "cornered" him with his patrol car.  After he did so, the other two males began walking away from Cook.  Cook told Niles and the other male to stop, at

2

which point Niles and the other male began to run away. Niles was soon apprehended. During his interrogation of Niles, Cook learned that Niles had consumed alcohol earlier in the day. Cook obtained a breath sample from Niles, which tested positive for alcohol. Niles was charged with obstructing a peace officer in violation of § 45-7-302(1), MCA, and possession of alcohol by a minor pursuant to § 45-5-624(1), MCA. Niles was not charged with theft.

¶4 During these criminal proceedings, Niles moved to suppress evidence gathered following his detention based on his contention that the officer lacked a particularized suspicion sufficient to detain him. The City Court denied his motion. Niles entered conditional pleas of guilty on July 13, 2001, and appealed the order denying his motion to suppress to the District Court, which also denied the motion to suppress on December 7, 2001.

STANDARD OF REVIEW

¶5 Where the facts in the case are stipulated, we review denial of a motion to suppress evidence to determine whether the district court's conclusions of law are correct. *State v. Devlin*, 1999 MT 90, ¶ 7, 294 Mont. 215, ¶ 7, 980 P.2d 1037, ¶ 7.

DISCUSSION

¶6 Did the District Court err when it concluded that the arresting police officer had a particularized suspicion to detain Niles?

¶7 The District Court denied Niles' motion to dismiss, based on its conclusion that Cook had sufficient particularized suspicion to detain Niles. The court concluded that Cook was responding to a reported crime of shoplifting, observed Niles in the company of two

3

males who matched the clerk's description of the alleged shoplifters, the three were in close proximity to the store, and Niles walked away when Cook "cornered" one of his companions.

¶8 Niles contends that the District Court erred because there was a lack of objective data for Cook to assume that Niles had engaged in criminal activity, as required by § 46-5-401, MCA. Niles contends that Cook had no objective grounds to detain him since he did not fit the description of the suspects and was only in the presence of the suspects. Niles admits that he ran from Cook but points out that he did so only after Cook asked him to stop, and that that behavior cannot be considered to determine whether Cook had a particularized suspicion to detain him in the first place.

¶9 The State contends that Cook did have enough objective information to detain Niles. The State notes that Cook was investigating a recently-reported crime in close proximity to the scene of the crime, that Niles was in the company of the two suspects when Cook spotted them, and that Niles and one of the suspects began walking away after Cook detained the other suspect. The State asserts that Niles' attempt to avoid Cook during the detention of the first suspect was additional objective information which led to Cook's particularized suspicion and contends that *State v. Bauer*, 2001 MT 248, 307 Mont. 105, 36 P.3d 892, supports that conclusion.

¶10 We have previously recognized that the Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons from unreasonable searches and seizures, including investigatory stops by police officers. *State*

4

*v. Jarman*, 1998 MT 277, ¶ 9, 291 Mont. 391, ¶ 9, 967 P.2d 1099, ¶ 9. The requirement for particularized suspicion to conduct an investigatory stop is codified by statute. "Montana requires that a peace officer have 'a particularized suspicion that the person . . . has committed, is committing, or is about to commit an offense' before stopping that person." *Bauer*, ¶ 13 (quoting § 46-5-401, MCA). To prove sufficient cause for a stop, the State must show: "(1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the person stopped is or has been engaged in wrongdoing." *Bauer*, ¶ 14. Whether a particularized suspicion exists depends on the totality of the circumstances. *Anderson v. State Dept. of Justice* (1996), 275 Mont. 259, 263, 912 P.2d 212, 214.

¶11 With the objective data available to Cook, we conclude that an experienced officer could form a particularized suspicion that Niles was engaged in criminal activity. Cook was dispatched to investigate a shoplifting report from an identified store clerk, the store clerk provided descriptions of approximate age and clothing of the two suspects, and within minutes of the store clerk's report to the police, Cook discovered Niles with two young males matching the store clerk's description of the suspects in close proximity to the convenience store. There is little doubt or dispute that Cook had a particularized suspicion sufficient to detain the suspect matching the store clerk's description. As Cook did so, he observed that Niles walked away from his police vehicle in the company of the other suspect who matched the clerk's description. All of this data permitted Cook, an experienced

officer, to make reasonable inferences and form a particularized suspicion that Niles was or had engaged in criminal activity with the other two suspects.

¶12 Niles' reliance on *State v. Broken Rope* (1996), 278 Mont. 427, 925 P.2d 1157, to suggest that Cook could not have formed a particularized suspicion as a matter of law is unpersuasive. In *Broken Rope*, the defendant was a passenger in a vehicle which police learned was owned by a person who was the subject of an outstanding arrest warrant. Police followed the suspect (the driver of the vehicle) and Broken Rope to a convenience store. The police observed that after the suspect and Broken Rope noticed the police officers, the two would not get back into their car, used a pay telephone, stared at the officers, and repeatedly put their hands in their pockets. No crime was being investigated. Nor was one committed in the officers' presence. When the officers approached and detained the suspect, they also detained and arrested Broken Rope. We concluded that Broken Rope's conduct prior to the detention (*e.g.* using a phone, entering a store, and placing hands in his pockets) was lawful and did not establish a particularized suspicion. *Broken Rope*, 278 Mont. at 432, 925 P.2d at 1160. Unlike the situation in *Broken Rope*, Niles was in the company of individuals matching the descriptions of two people who were reported to have committed a crime. They were all in close proximity to the crime scene shortly after the crime was reported and Cook was actively investigating the crime report. When Cook detained one of the suspects, Niles walked away from him in the company of a second suspect.

6

¶13  In *Bauer*, we concluded that a particularized suspicion was justified where, early in the morning with few people walking around, police located the defendant in close proximity to a report of two people "messing with cars," and upon seeing the officers in their clearly-marked vehicle, the defendant ran away from police. *Bauer*, ¶ 16.  While the facts of *Bauer* are also distinguishable from those in this case, certain similarities are important.  For example, the fact that the police report did not provide a physical description of the defendant did not preclude the formation of a particularized suspicion when the defendant openly fled from the police.  *Bauer*, ¶ 15.  Here, Niles, while not physically described in the police report, was clearly associated with the two described suspects near the area of the crime, and while he did not run from Cook, he did walk away from Cook in the presence of a suspect and in such a manner that, under the totality of the circumstances, Cook could form a particularized suspicion that Niles was engaged in or had been engaged in criminal wrongdoing.

¶14  For the foregoing reasons, the order of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

7