# FILED

August 19 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0633

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 294

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

JON ROSS McMASTER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DC 07-03
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jim Wheelis, Chief Appellate Defender; Lisa S. Korchinski, Assistant
Appellate Defender; Helena, Montana

        For Appellee:

            Hon. Mike McGrath, Montana Attorney General; J. Stuart Segrest,
Assistant Attorney General, Helena, Montana

            Mary Ann Ries, Pondera County Attorney, Conrad, Montana

Submitted on Briefs:  July 16, 2008

Decided:  August 19, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Jon Ross McMaster (McMaster) appeals from his conviction in the Ninth Judicial District, Pondera County, of felony criminal possession of dangerous drugs. We affirm.

¶2    We restate the issue as follows:

¶3    Did the District Court err when it determined that Deputy Suta had particularized suspicion to stop McMaster's vehicle?

## BACKGROUND

¶4    On December 29, 2006, Police Officer Travis Alexander observed a possible drug deal in the parking lot of the Town Pump and Lucky Lil's Casino in Conrad, Montana. Officer Alexander noticed three individuals continuously monitoring his actions and engaging in suspicious behavior. The individuals left their vehicles and entered the casino, looking over their shoulders as they went.

¶5    Officer Alexander moved his patrol vehicle to a more discreet location and continued to observe the Town Pump. After a short time, the individuals exited the casino, returned to their vehicles, and exchanged a box. The individuals then got in their vehicles and left the Town Pump. Officer Alexander followed one vehicle and contacted Pondera County Sheriff's Deputy Carl Suta, the local narcotics officer, and requested that he follow the second vehicle, a pickup with the license plate "J R M."

¶6    Deputy Suta contacted dispatch and learned that the vehicle was registered to Jon Ross McMaster, a known cocaine and methamphetamine dealer. In an unmarked car, Deputy Suta followed the pickup on the interstate from the Conrad Town Pump to the

2

Ledger exit, the first exit north of Conrad. After he observed apparent traffic violations and erratic driving, Deputy Suta requested that a deputy in a marked patrol vehicle stop the pickup.

¶7 The deputies identified McMaster as the vehicle's driver. While the deputies spoke with McMaster, McMaster reached into the seat of the vehicle and behind the seat. Deputy Suta observed what he believed to be knife handles in the door pocket, a metal dart stuck in the dash, and heavy flashlights within McMaster's reach. Deputy Suta had McMaster exit the pickup, and the deputy performed a pat-down of McMaster. Deputy Suta discovered a pocket knife and a methamphetamine pipe. The deputies arrested McMaster for possession of drug paraphernalia.

¶8 During booking, law enforcement found marijuana and a second glass pipe containing methamphetamine residue in McMaster's pockets. McMaster admitted to Deputy Suta that he was traveling to Spokane to purchase methamphetamine, and he disclosed that the individuals at the Town Pump were giving him money to purchase drugs. McMaster explained that they agreed to meet at the Ledger exit after they noticed Officer Alexander at the Town Pump. McMaster consented to a search of his pickup, and officers discovered $9,000 under the seat, several glass pipes, lighters, and additional methamphetamine.

¶9 The State charged McMaster with three misdemeanors for possession of marijuana and drug paraphernalia and one felony for criminal possession of methamphetamine. McMaster moved to suppress the evidence and dismiss the charges, arguing that Deputy

3

Suta did not possess the particularized suspicion required to justify the stop. The District Court denied McMaster's motion. Under a plea agreement, McMaster then pleaded guilty to the felony charge, and the State dismissed the misdemeanor charges. McMaster specifically reserved his right to appeal, and he now appeals the District Court's denial of his motion to suppress.

## STANDARD OF REVIEW

¶10 We review a district court's denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous and whether the district court's conclusions of law are correct. *State v. Thomas*, 2008 MT 206, ¶ 9, 344 Mont. 150, ¶ 9, 186 P.3d 864, ¶ 9.

## DISCUSSION

¶11 **Did the District Court err when it determined that Deputy Suta had particularized suspicion to stop McMaster's vehicle?**

¶12 McMaster argues that Deputy Suta did not possess enough objective data to form the requisite particularized suspicion to justify an investigative stop and that the District Court thus erred when it denied his motion to suppress/dismiss.

¶13 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons from unreasonable searches and seizures. These protections extend to brief investigative stops of vehicles. *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 694-95 (1981); *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981). An officer may conduct a constitutionally valid investigative stop of a

4

vehicle if the officer possesses a "particularized suspicion" that the vehicle's occupant "has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. To establish particularized suspicion, the State must demonstrate (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the vehicle's occupant is or has been engaged in wrongdoing. *State v. Gouras*, 2004 MT 329, ¶ 16, 324 Mont. 130, ¶ 16, 102 P.3d 27, ¶ 16. Whether particularized suspicion supports an investigative stop is a question of fact that we evaluate in the context of the totality of the circumstances. *Thomas*, ¶ 10. When evaluating the totality of the circumstances, we consider the quantity or content of the information available to the officer and the quality or degree of reliability of that information. *Thomas*, ¶ 10.

¶14 McMaster argues that particularized suspicion cannot result from "general information and observed behavior" that is not illegal, but that officers may view as suspicious. McMaster cites to *State v. Broken Rope*, 278 Mont. 427, 925 P.2d 1157 (1996) as an example. McMaster then isolates the factors on which Deputy Suta relied and argues that they do not rise to the level of particularized suspicion. McMaster maintains that the observed behaviors were consistent with innocent behavior. For example, McMaster points out that the events occurred during the Christmas season, and he argues that the box transferred at the Town Pump could have contained a gift, rather than drugs. Similarly, although Deputy Suta may have known that drug deals commonly occur at the Town Pump, the Town Pump is also a "place where people gather to

5

purchase gas, convenience items, and gamble." McMaster also discounts as "second-hand" Deputy Suta's knowledge of McMaster's drug-dealing activity and his knowledge regarding the activity at the Town Pump.

¶15 The United States Supreme Court has unanimously rejected the "divide-and-conquer" approach employed by McMaster. *U.S. v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 751 (2002). In *Arvizu*, the Supreme Court stated that such an approach "departs sharply" from the Court's reasonable-suspicion jurisprudence and fails to "take into account the 'totality of the circumstances . . . .'" *Arvizu*, 534 U.S. at 274, 122 S. Ct. at 751. The Court reiterated that a series of innocent actions, when taken together, may warrant further investigation. *Arvizu*, 534 U.S. at 274, 122 S. Ct. at 751 (citing *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880-81 (1968)).

¶16 We agree with the Supreme Court that the approach McMaster offers fails to recognize the totality of the circumstances. Further, we reject McMaster's suggestion that an officer cannot rely on another officer's observations to support particularized suspicion because the information is "second-hand." Montana law allows an arresting officer to rely on information from another officer to establish particularized suspicion. *See State v. Olmsted*, 1998 MT 301, ¶ 34, 292 Mont. 66, ¶ 34, 968 P.2d 1154, ¶ 34, *overruled on other grounds*, *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815.

¶17 McMaster also finds no support from *Broken Rope* as the factual circumstances present here differ significantly from those present in that case. In *Broken Rope*, we held

6

that no particularized suspicion existed to justify the investigative stop of a man whom officers observed entering and leaving a Kwik Way, talking on a phone, walking around the store's parking lot, putting his hands in his pockets, and staring at an officer. 278 Mont. at 432, 925 P.2d at 1160. In that case, we rejected the State's contention that the officers "could draw upon their training and experience" to conclude that Broken Rope was acting in a "suspicious and nervous manner" that would justify an investigative stop, and we stated that Broken Rope's actions were not "inherently suspicious." *Broken Rope*, 278 Mont. at 432, 925 P.2d at 1160. Our review, however, was confined to an agreed statement of facts, and we observed that the agreed facts contained no information regarding the officers' training and experience. *Broken Rope*, 278 Mont. at 432, 925 P.2d at 1160. Further, the agreed facts did not mention whether the officers had even concluded that Broken Rope was acting nervous or suspicious. *Broken Rope*, 278 Mont. at 432, 925 P.2d at 1160. In *Broken Rope*, the officers possessed no information about Broken Rope prior to the investigative stop, and there was no indication that the Kwik Way was a location known for illegal activity.

¶18 In this case, Deputy Suta's testimony revealed that he stopped McMaster based on Officer Alexander's observations at the Conrad Town Pump, Deputy Suta's knowledge of McMaster as a drug-dealer, his personal observations of McMaster's erratic driving, and his knowledge that the Town Pump was a location known for drug deals.

¶19 Officer Alexander informed Deputy Suta that three individuals were engaged in suspicious behavior next to their vehicles in the Town Pump and Lucky Lil's Casino

parking lot. Officer Alexander told Deputy Suta that the individuals were continuously monitoring his actions and that they went into the casino after they noticed him. Once he moved his patrol car out of sight, Officer Alexander observed the individuals exit the casino and transfer a box from one vehicle to the other. Deputy Suta described the individuals' initial behavior as "rubber-necking" – when individuals constantly look at an officer "eight or 10 times in a couple of seconds" – and distinguished this activity from the public's usual reaction to an officer in a marked car. According to Deputy Suta, while the general public might look at an officer once, people who are "rubber-necking" often are engaged in illegal activity.

¶20   Deputy Suta testified that, in addition to a Pondera County Sheriff's deputy, he is also federally deputized as a member of the Blackfeet Safe Trails Task Force. Deputy Suta testified that he had been trained to recognize behaviors and activities consistent with drug traffickers and that he had received over 200 hours of drug-crime education. Deputy Suta described that the majority of his work involves investigating drug crimes and that his drug task force works closely with law enforcement and drug task forces throughout Montana. He explained that the task forces commonly share information regarding suspected drug traffickers.

¶21   Deputy Suta testified that, based on his experience and through shared information with the Great Falls Police Department and the Central Task Force, he knew that McMaster was a "very large player" in the cocaine and methamphetamine drug trade in Great Falls and the surrounding areas, including Conrad. Deputy Suta testified that when

he learned the pickup with the "J R M" plates was registered to Jon Ross McMaster, "all kinds of bells [went] off." Deputy Suta had learned from the Great Falls police that McMaster recently had sold his home to finance his drug-dealing venture. Deputy Suta had also discovered information linking McMaster to the drug trade while executing a search warrant earlier in the month, and a person he arrested confirmed that McMaster was a large-scale drug dealer. Deputy Suta explained that he believed McMaster to be the driver of the vehicle based on the license plates and the driver's build. Deputy Suta further testified that he had witnessed drug deals at the Town Pump and that, based on his training and experience with the Blackfeet Safe Trails Task Force, he knew that it was "common practice" for drug dealers to use the Conrad Town Pump for illegal drug transactions.

¶22 Deputy Suta testified that he followed McMaster from the Town Pump onto Interstate 15 and observed McMaster commit traffic violations and engage in erratic driving. According to Deputy Suta, he was traveling approximately 83 miles per hour and McMaster was pulling away from him. Deputy Suta observed McMaster exit the interstate at Ledger and drive toward Highway 91, which parallels I-15. McMaster slowed and stopped his pickup, and then drove a bit further before stopping. McMaster next drove onto Highway 91, performed a u-turn, and drove a short distance before stopping again. According to Deputy Suta, McMaster appeared to be looking for something or waiting to meet someone. Deputy Suta testified that, when McMaster spotted him, McMaster accelerated back to the interstate and traveled south on I-15.

After observing McMaster's erratic driving, Deputy Suta requested that Chief Deputy Dailey, who was traveling behind Suta in a marked patrol vehicle, stop McMaster.

¶23 Determining whether particularized suspicion supports an investigative stop "does not deal with hard certainties, but with probabilities." *Gopher*, 193 Mont. at 192, 631 P.2d at 295 (quoting *Cortez*, 449 U.S. at 418, 101 S. Ct. at 695). We conclude that Deputy Suta, an experienced law enforcement officer and a specially trained member of a drug task force, reasonably could infer that McMaster was engaged in criminal activity based on Officer Alexander's observations at the Town Pump, Deputy Suta's personal observations of McMaster's erratic driving, Deputy Suta's knowledge of McMaster as a drug dealer, and Deputy Suta's knowledge of the Town Pump as a location known for drug deals. Thus, we conclude that the District Court did not err when it determined that Deputy Suta possessed the requisite particularized suspicion to justify the investigative stop.

¶24 We affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE