
DA 10-0128

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 36

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

STEVEN L. RODRIGUEZ,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-09-57
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Joslyn Hunt, Chief Appellate Defender, Jennifer A. Hurley, Assistant
Appellate Defender, Helena, Montana

    For Appellee:

        Steve Bullock, Montana Attorney General, Matthew T. Cochenour,
Assistant Attorney General, Helena, Montana

        Fred R. Van Valkenburg, Missoula County Attorney, Suzy Boylan,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs: February 1, 2011
Decided: March 1, 2011

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Steven Rodriguez (Rodriguez) appeals a Fourth Judicial District Court order denying his motion to dismiss, arguing that Missoula County Sheriff's Deputy Jonathan Stineford (Stineford) lacked particularized suspicion to conduct an investigatory stop. Rodriguez also appeals his conviction of felony Driving Under the Influence (DUI) arguing that the District Court erred in allowing the introduction of Horizontal Gaze Nystagmus (HGN) evidence during trial.  We affirm.

## ISSUES

¶2     A restatement of the issues on appeal is:

1.  Did the totality of the circumstances support a finding that Deputy Stineford had particularized suspicion that Rodriguez was casing a business for burglary?

2.   Did the District Court abuse its discretion when it qualified Deputy Stineford to testify about the administration and results of the HGN test?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     At approximately 11:30 p.m. on January 13, 2009, Deputy Stineford and Reserve Deputy Whitney Wiles (Wiles) were patrolling West Broadway in Missoula, Montana, when they observed a pickup truck rolling slowly through the Kurt's Polaris parking lot. Deputy Stineford noted that the truck's headlights were off and it was well after business hours.  Given these factors, as well as the fact that Kurt's Polaris carried large quantities of expensive merchandise, Deputy Stineford found the truck's activity suspicious. Therefore, he made a u-turn and returned to the parking lot, activating his on-board camera en route and pulling in behind the truck with his overhead lights flashing.  As

Deputy Stineford arrived at Kurt's Polaris, the driver of the truck had turned on its headlights and Deputy Stineford observed the truck had moved approximately one car length since he first spotted it.

¶4 Deputy Stineford made contact with the driver of the truck who was identified as the defendant, Rodriguez. Deputy Stineford noticed Rodriguez's breath smelled of alcohol, his eyes were glassy and bloodshot, and his speech was slow. Based on these observations, Deputy Stineford began a DUI investigation. Rodriguez then admitted he had been drinking, but was unsure how much beer he drank. Rodriguez refused to perform the three standard field sobriety tests on the roadside, saying "just take me to jail." Deputy Stineford then transported Rodriguez to the Missoula County Detention Facility.

¶5 Once at the detention facility, Deputy Stineford requested Rodriguez perform the three standard field sobriety tests: the HGN test, the walk-and-turn test, and the one-legged stand. Deputy Stineford administered the HGN test and noted six out of six indicators of impairment. Rodriguez began the walk-and-turn test, but could not keep his balance and stepped off the line, failed to walk heel-to-toe, raised his arms, and refused to continue walking after a few steps. Rodriguez declined to perform the one-legged stand test stating "I'm drunk," and refused to provide a breath sample.

¶6 Based on his seven prior DUI convictions, the State charged Rodriguez with felony DUI in violation of § 61-8-401(1)(a), MCA. Rodriguez then moved the court to dismiss the charge for lack of particularized suspicion and requested an evidentiary hearing be held on the motion. On May 27, 2009, the District Court heard testimony

from Rodriguez and Deputy Stineford. Rodriguez testified that: he had pulled into the parking lot to check a text message on his phone under the lights of the Kurt's Polaris sign; his headlights were on the entire time; and he had not driven through the parking lot. Deputy Stineford testified that, based on his experience in law enforcement, a truck driving without its headlights through the parking lot of a closed building that contained expensive merchandise was suspicious. The court concluded that Deputy Stineford had reasonable suspicion to justify the investigatory stop and dismissed Rodriguez's motion.

¶7 On June 10, 2009, Rodriguez requested a rehearing on his motion to dismiss on the basis that he had not known Deputy Stineford had an on-board video of Rodriguez's investigatory stop. Therefore, on July 1, 2009, the court held a second evidentiary hearing in which it heard testimony from Rodriguez, Stineford, and Wiles, and considered the on-board video and a cell phone recording from Rodriguez's phone. The District Court again found particularized suspicion for the investigatory stop and denied Rodriguez's motion to dismiss.

¶8 At trial, the District Court heard testimony from Deputy Stineford about his training and experience in conducting DUI investigations, as well as testimony regarding the investigation of Rodriguez. Specifically, Deputy Stineford testified he had received training to conduct DUI investigations, including a 40-hour class at the Montana Law Enforcement Academy. A portion of that class specifically addressed the standard field sobriety tests. In addition, Deputy Stineford received senior operator training, which is specifically focused on DUI, and he had attended a seminar taught by an ophthalmologist entitled "Understanding Gaze Nystagmus." Deputy Stineford acknowledged the seminar

4

took place some months after Rodriguez's arrest, but confirmed he had followed the proper techniques when he administered the HGN test to Rodriguez. Finally, Deputy Stineford testified that he had also been qualified as an HGN expert in justice court and that he investigated approximately two DUIs per week. Based on this testimony, the court qualified Deputy Stineford as an HGN expert over Rodriguez's objection.

¶9 Once qualified as an expert, Deputy Stineford testified that based on his knowledge of the six indicators of impairment measured with the HGN test, Rodriguez's blood alcohol content exceeded the legal limit.

¶10 At the close of trial, the jury convicted Rodriguez of DUI. He was committed to the Department of Corrections for five years to run consecutive with any other sentence he was currently serving, and Rodriguez was given credit for 365 days served. Rodriguez timely appeals.

## STANDARD OF REVIEW

¶11 We review a district court's denial of a motion to suppress evidence to determine whether the district court's findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. *State v. Clawson*, 2009 MT 228, ¶ 9, 351 Mont. 354, 212 P.3d 1056. We review a finding that an officer had particularized suspicion to conduct an investigatory stop to determine whether the finding was clearly erroneous. *Clawson*, ¶ 9 (citing *State v. Farabee*, 2000 MT 265, ¶ 11, 302 Mont. 29, 22 P.3d 175).

5

¶12 Additionally, we review for abuse of discretion a district court's determination on the qualification and competency of an expert witness. *State v. Harris*, 2008 MT 213, ¶ 6, 344 Mont. 208, 186 P.3d 1263. Abuse of discretion occurs if a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Henson*, 2010 MT 136, ¶ 19, 356 Mont. 458, 235 P.3d 1274. A district court has "considerable latitude when ruling on the admissibility of expert witness testimony." *Harris*, ¶ 6 (citing *State v. Crawford*, 2003 MT 118, ¶ 30, 315 Mont. 480, 68 P.3d 848).

**DISCUSSION**

¶13 *Issue One: Did the totality of the circumstances support a finding that Deputy Stineford had particularized suspicion that Rodriguez was casing a business for burglary?*

¶14 As a preliminary matter, Rodriguez argues that we cannot consider Deputy Stineford's testimony as to whether Rodriguez was parked or slowly rolling through the Polaris parking lot because the District Court did not make a specific finding in its order denying Rodriguez's motion to dismiss that it expressly relied on that fact to determine particularized suspicion. Relying on *State v. Hilgendorf*, 2009 MT 158, ¶ 11, 350 Mont. 412, 208 P.3d 401 and *State v. Broken Rope*, 278 Mont. 427, 432, 925 P.2d 1157, 1160 (1996), Rodriguez further argues that we may only review undisputed facts and the district court's findings of fact. The State counters that our review is of the entire district court record and Rodriguez misapprehends the holdings of *Hilgendorf* and *Broken Rope*. We agree with the State.

6

¶15 It is well-settled law in Montana that we review the entire district court record to determine if a district court's findings are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehends the effect of the evidence, or if our *review of the record* convinces us that a mistake has been committed. *LeFeber v. Johnson*, 2009 MT 188, ¶ 18, 351 Mont. 75, 209 P.3d 254 (emphasis added). *Hilgendorf* does not support Rodriguez's argument, *see Hilgendorf*, ¶ 11, and *Broken Rope* is inapposite as there we were limited to agreed-upon facts because the appeal was confined by the parties to an agreed statement of facts. *Broken Rope*, 278 Mont. at 428, 925 P.2d at 1157. Such is not the case here. Therefore, we review the entire record.

¶16 Turning to the first issue, both the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution prohibit unreasonable searches and seizures; these protections apply to investigative stops of vehicles. *State v. McMaster*, 2008 MT 294, ¶ 13, 345 Mont. 408, 191 P.3d 443 (citing *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 694-95 (1981); *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981)). Section 46-5-401(1), MCA, states:

> In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

¶17 To justify an investigatory stop, the State has the burden to show the officer possessed: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting particularized suspicion that the occupant of the motor

7

vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *State v. Gilder*, 1999 MT 207, ¶ 10, 295 Mont. 483, 985 P.2d 147; *see Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. Whether particularized suspicion exists is a question of fact that depends on the totality of the circumstances including, but not limited to, "the quantity, or content, and quality, or degree of reliability, of the information available to the officer." *Gilder*, ¶ 11 (quoting *State v. Pratt,* 286 Mont. 156, 161, 951 P.2d 37, 40 (1997)); *see also State v. Gouras*, 2004 MT 329, ¶ 15, 324 Mont. 130, 102 P.3d 27. In evaluating the totality of the circumstances, some factors we have previously considered are the time of day, whether nearby businesses are closed, a vehicle's location, and the occupant's behaviors. *See e.g. Gopher*, 193 Mont. at 194, 631 P.2d at 296; *Hilgendorf*, ¶ 18; *Brown*, ¶ 23.

¶18     Rodriguez argues that the totality of circumstances here was not similar enough to the circumstances of *Gopher* and *Hilgendorf* to support a finding of particularized suspicion. However, we do not require a checklist of factors be satisfied before an officer may justify an investigative stop; rather, the question is whether the officer can point to "specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant the intrusion." *Brown*, ¶ 22 (quoting *Clark v. State, ex rel., Driver Imp. Bureau*, 2005 MT 65, ¶ 9, 326 Mont. 278, 109 P.3d 244). Given this well-settled law, it is irrelevant if the facts of this case are not exactly in line with the facts of *Gopher* and *Hilgendorf*. We conclude Deputy Stineford's specific and articulable facts and inferences gathered while observing Rodriguez support a finding of particularized suspicion to justify an investigative stop.

¶19 Deputy Stineford observed Rodriguez's vehicle located outside Kurt's Polaris at 11:30 p.m., well after the business had closed. He testified that he observed Rodriguez's vehicle, with its headlights off, rolling slowly through the parking lot of a business that contained a significant amount of expensive inventory. Deputy Stineford testified that his experience taught him that burglaries of businesses occur at night and that no vehicles were typically present in the business's parking lot at night. These objective and articulable observations reasonably led Deputy Stineford to possess the requisite particularized suspicion that Rodriguez was casing Kurt's Polaris to commit burglary. The District Court did not err in concluding that Deputy Stineford was justified in conducting an investigative stop of Rodriguez.

¶20 *Issue Two: Did the District Court abuse its discretion when it qualified Deputy Stineford to testify about the administration and results of the HGN test?*

¶21 A witness must be qualified as an expert to testify about HGN testing because the relationship between alcohol consumption and nystagmus, while not novel scientific evidence, is nonetheless scientific evidence beyond the range of ordinary training and intelligence. *Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 69, 289 Mont. 1, 961 P.2d 75. Thus, before an officer may testify about the results of an HGN test, the State must provide foundation to show the officer was "properly trained to administer the HGN test and that he administered the test in accordance with this training," *id*. at ¶ 70, and a district court must conduct a conventional M. R. Evid. 702 analysis to determine admissibility of the testimony. *Id*. at ¶ 70. Notably, an officer may be qualified to testify as to the HGN test administration and results, but may not be qualified to testify as to the

9

scientific basis of the HGN test results without additional foundation laid. *Id.* at ¶ 70. These are two separate analyses.

¶22 Here, Rodriguez argues that the District Court abused its discretion when it qualified Deputy Stineford as an expert on HGN and allowed him to testify about the administration and results of the HGN test. Rodriguez argues that, to qualify Deputy Stineford as an expert, the State relied entirely on the four-hour seminar "Understanding Nystagmus Gaze" that Deputy Stineford attended in April 2009, four months after he administered the HGN test to Rodriguez. However, Rodriguez's argument fails for two reasons. First, it overlooks the rest of Deputy Stineford's testimony that was presented by the State to qualify Stineford as an expert. Second, the April 2009 training goes to Deputy Stineford's training and qualifications to testify about the scientific basis underlying the HGN test, not his training and qualifications on the proper administration of the test; as Rodriguez expressly states in his brief, he does not raise on appeal the issue of whether Deputy Stineford was qualified to explain the scientific basis of the HGN test results.

¶23 Based on the record before us, we conclude the District Court did not err in finding that Deputy Stineford was an expert witness qualified to testify about the administration of the HGN test. Similar to the foundational testimony we found sufficient in *Hulse,* Deputy Stineford testified at length about his training at the Law Enforcement Academy and the advanced operator training, both of which had components that specifically addressed DUI investigations and field sobriety tests, including administration of the HGN test. *See Hulse*, ¶¶ 71-72. All of this training

10

occurred prior to January 2009. Deputy Stineford also testified he had previously been qualified as a DUI expert in justice court and investigated roughly two DUIs per week. He further testified that he followed proper procedure when he administered the HGN test to Rodriguez and the record demonstrates that he explained this procedure in great detail to the court. That Deputy Stineford received subsequent additional training from an ophthalmologist about the scientific basis underlying the correlation between nystagmus and alcohol does not mean his prior DUI training and experience was inadequate. Given the considerable latitude a district court has when ruling on admissibility of expert testimony, and given that nothing in the record indicates the District Court arbitrarily exceeded the bounds of reason in qualifying Deputy Stineford as an expert, we conclude the District Court did not abuse its discretion when it qualified Deputy Stineford as an expert and allowed him to testify as to the administration of the HGN test.

## CONCLUSION

¶24    For the forgoing reasons, we hold that the District Court did not err when it found that Deputy Stineford had particularized suspicion to conduct an investigatory stop of Rodriguez, and it did not err in concluding Deputy Stineford was qualified to testify about the administration and results of the HGN test.

¶25    Affirmed.

/S/ PATRICIA COTTER

We concur:

11

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE