FILED

06/24/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0044

DA 23-0044

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 129

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

TYLER MATTHEWS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 21-439
Honorable Jessica T. Fehr, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Tammy A. Hinderman, Appellate Defender Division Administrator,
              Jennifer Penaherrera, Assistant Appellate Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
              Attorney General, Helena, Montana

              Scott D. Twito, Yellowstone County Attorney, John M. Ryan, Deputy
              County Attorney, Billings, Montana

Submitted on Briefs: April 9, 2025

Decided: June 24, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1　Tyler Brandon Matthews (Matthews) appeals the denial of his motion to suppress and his subsequent conviction for driving under the influence entered in Yellowstone County Justice Court and affirmed by the Thirteenth Judicial District Court. We address the following restated issue on appeal:

> *Whether the Justice Court erred by finding law enforcement's testimony that the defendant was exhibiting signs of impaired driving, including unusual speeds and drifting within the lane, supported particularized suspicion to initiate an investigative stop.*

We affirm and remand for correction of a clerical error in the written judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2　Matthews was driving around 10:22 p.m. on December 30, 2019, in Huntley, Montana, when then-Corporal Bethany Richter observed several driving behaviors that drew her attention. Corporal Richter testified that she saw Matthews make a slow, wide turn onto the road; repeatedly swerve between the center line and the fog line; swerve to the fog line to avoid an oncoming vehicle; drive unusually slow; suddenly accelerate to 45 miles per hour; and fail to maintain speed. Realizing that Matthews was approaching the interstate, Richter initiated a stop which resulted in Matthews's arrest and charge for driving under the influence.

¶3　In Yellowstone County Justice Court, Matthews moved to suppress evidence of the stop, arguing that observations of Corporal Richter did not rise to the level of particularized suspicion. He asserted that the "wide turn" was not in fact wide but a standard 90-degree turn; the claim that he was "swerving" or "weaving" was overstated; his "rapid

2

acceleration" was due to a posted change in speed limit; and his speed variance was a normal response to curves and railroad crossings. The Justice Court held an evidentiary hearing where Corporal Richter testified to her observations and her law enforcement training and experience, which included specialty training as a drug recognition expert. Richter explained that the time of day and proximity of bars in the area also contributed to increased incidences of impaired driving. The dash cam video footage was entered into evidence and viewed by the Court. The Justice Court denied Matthews's motion, concluding that Richter's training and observations created sufficient particularized suspicion. The District Court affirmed the Justice Court's decision. Matthews appeals.

## STANDARD OF REVIEW

¶4     Cases that originate in justice court and are appealed to district court are reviewed as if the case were appealed directly to this Court; accordingly, we review the record independent of the district court's decision. *State v. Maile*, 2017 MT 154, ¶ 7, 388 Mont. 33, 396 P.3d 1270 (citations omitted). We review a court's factual findings of particularized suspicion for clear error and its application of those facts to the law for correctness. *City of Missoula v. Sharp*, 2015 MT 289, ¶ 5, 381 Mont. 225, 358 P.3d 204 (citing *State v. Larson*, 2010 MT 236, ¶ 15, 358 Mont. 156, 243 P.3d 1130). We review criminal sentences for legality. *State v. Yang*, 2019 MT 266, ¶ 8, 397 Mont. 486, 452 P.3d 897.

**DISCUSSION**

¶5 *Whether the Justice Court erred by finding law enforcement's testimony that the defendant was exhibiting signs of impaired driving, including unusual speeds and drifting within the lane, supported particularized suspicion to initiate an investigative stop.*

¶6 Matthews challenges the Justice Court's findings of fact supporting particularized suspicion, arguing that the dash cam video footage directly refutes Corporal Richter's characterization of his driving. He asserts that the Justice Court erred by overvaluing the weight of Richter's testimony compared to the dash cam video. Based on the record, we cannot conclude that the Justice Court clearly erred in its findings of fact.

¶7 Under Montana law, law enforcement may "stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. Particularized suspicion is supported where an officer has objective data from which they can make certain inferences and a resulting particularized suspicion that the person "is or has been engaged in wrongdoing or was a witness to criminal activity." *State v. Flynn*, 2011 MT 48, ¶ 7, 359 Mont. 376, 251 P.3d 143 (citing *Weer v. State*, 2010 MT 232, ¶ 10, 358 Mont. 130, 244 P.3d 311). Whether particularized suspicion supports an investigative stop is a question of fact that we evaluate in the context of the totality of the circumstances. *State v. McMaster*, 2008 MT 294, ¶ 13, 345 Mont. 408, 191 P.3d 443 (citing *State v. Thomas*, 2008 MT 206, ¶ 10, 344 Mont. 150, 186 P.3d 864).

¶8     The Justice Court found that Richter had "articulated several objective factors for her belief that [Matthews] was operating his motor vehicle under the influence," including his initial turn, his inconsistent speeds, his weaving within the lane, the presence of bars in the area, and the time of day; and that this behavior, combined with Richter's experience and training, gave rise to particularized suspicion. Richter's testimony established that, under the totality of the circumstances, there was particularized suspicion that Matthews was driving while impaired. The Justice Court made these factual findings after reviewing the dash cam video footage. While Matthews argues that the video footage contradicts Richter's testimony, it was up to the finder of fact—in this instance the Justice Court—to assess the credibility and reliability of the evidence and consider any discrepancies between Richter's testimony and the dash cam video.

¶9     This Court also carefully and independently considered the dash cam video. As the dissent evinces, reasonable minds differ on whether the footage supports or contradicts finding particularized suspicion—to some, it is completely reasonable driving behavior; to others, it is obvious impairment. This subjectivity shows why Corporal Richter's testimony was critical to the Justice Court's factfinding. And unlike this Court or either of the previous reviewing courts, Richter experienced the stop firsthand and is a credentialed expert on impaired driving behavior. The Justice Court found her testimony, combined with her expertise and training, persuasive in interpreting the behaviors displayed in the video. This is the exact role and purpose of the factfinding court. Accordingly, we conclude the Justice Court's findings of fact supporting particularized suspicion are not

clearly erroneous, and its resulting conclusion of law that sufficient particularized suspicion existed to initiate an investigatory stop is correct.

¶10 Both parties agree, however, that a clerical error occurred in the written judgment. The judgment rendered by the Justice Court orders Matthews to pay a $2,000 fine, but the oral pronouncement of sentence ordered a $600 fine. "[T]he oral pronouncement of sentence is the legally effective sentence and . . . the written judgment and commitment serves as evidence of the sentence orally pronounced. . . . [I]n the event of a conflict . . . the oral pronouncement controls." *State v. Lane*, 1998 MT 76, ¶ 48, 288 Mont. 286, 957 P.2d 9. Thus, consistent with the oral pronouncement of sentence, the written judgment should be corrected to reflect a $600 fine.

## CONCLUSION

¶11 The Justice Court's findings of fact were not clearly erroneous and its conclusions of law were correct. We remand for correction of the written judgment to reflect a fine of $600 as orally pronounced during sentencing.


/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Katherine Bidegaray, dissenting.

¶12 I dissent from the Court's conclusion that Corporal Richter had particularized suspicion to stop Matthews' vehicle. While I acknowledge the deferential standard we

6

typically apply to lower courts' factual determinations, we must nonetheless rigorously ensure that substantial evidence supports the foundational facts relied upon to justify a stop and that objective evidence—in this case, the dash cam footage—does not clearly contradict them.

¶13    The Majority relies heavily on Corporal Richter's testimony describing Matthews' purportedly suspicious driving behaviors:  a "wide turn," "inconsistent speeds," "weaving within the lane," and "rapid acceleration" up to 45 miles per hour.  However, the video evidence, a critical component of this case, substantially undermines these claims.

¶14    Specifically, the dash cam footage directly contradicts Corporal Richter's assertions that Matthews made an unusually wide turn or repeatedly "swerved" within his lane.  Instead, the footage depicts standard driving maneuvers, with Matthews consistently staying within his lane.  Any slight drifting observed in the video is minimal and certainly does not rise to a level objectively indicative of impairment.  Moreover, Matthews' supposed rapid acceleration from 15 mph to 45 mph is demonstrably inaccurate.  The video instead clearly shows Matthews gradually increasing speed from approximately 25 mph to 35 mph upon entering a marked 35 mph zone and thereafter accelerating only modestly as he approached a 45 mph sign—conduct entirely consistent with lawful, prudent driving.

¶15    It is our duty to ensure law enforcement actions comply with constitutional protections.  "Particularized suspicion" must be supported by objective, articulable facts, not merely subjective interpretations or exaggerated testimony.  Our prior case law emphasizes that merely minor deviations from an ideal driving pattern, without more, do not constitute sufficient grounds for initiating an investigatory stop.  *See State v. Reeves*,

7

2019 MT 151, ¶¶ 13-22, 396 Mont. 230, 444 P.3d 394 (defendant's waiting a "prudent amount of time" at a stop sign, delayed activation of his turn signal, and executing a lawful turn could not support particularized suspicion for a traffic stop); *State v. Fisher*, 2002 MT 335, ¶¶ 19-21, 313 Mont. 274, 60 P.3d 1004 (defendant's making an "entirely legal and ordinary turn on a public street" and "subsequent turns leading back to the street he originally left" was not grounds for particularized suspicion he was evading police).

¶16 Here, the Justice Court and Majority unreasonably defer to Corporal Richter's testimony without adequately addressing the substantial conflicts the objective dash cam footage presents. Such disregard for clear visual evidence risks eroding the constitutional safeguard of particularized suspicion by substituting genuine, observable facts with subjective assertions of suspicion. Matthews' lawful acceleration within posted speed limits and minimal lane deviations cannot justifiably form the basis for suspicion of impaired driving.

¶17 Accordingly, I would reverse the lower court's denial of Matthews' motion to suppress. Absent valid particularized suspicion, the investigative stop was constitutionally infirm. I therefore respectfully dissent.

/S/ KATHERINE M BIDEGARAY

8