DA 07-0335

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 206

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

MICHELLE THOMAS,

  Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
      In and For the County of Missoula, Cause No. DC 05-582
      Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

    Jim Wheelis, Chief Appellate Defender; Shannon L. McDonald, Assistant
    Appellate Defender, Helena, Montana

  For Appellee:

    Hon. Mike McGrath, Attorney General; Mark W. Mattioli, Assistant
    Attorney General, Helena, Montana

    Fred Van Valkenburg, Missoula County Attorney; Jennifer Clark, Deputy
    County Attorney, Missoula, Montana

        Submitted on Briefs: April 9, 2008

            Decided: June 10, 2008

Filed:

    _____
          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Michelle Thomas (Thomas) appeals from an order of the Fourth Judicial District, Missoula County, denying her motion to suppress. We affirm.

¶2    Thomas presents the following issue for review:

¶3    Whether the District Court properly determined that particularized suspicion supported the investigatory stop that led to the State's discovery of evidence against Thomas.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Missoula County Deputy Sheriff Patrick Turner (Officer Turner) had been serving civil papers in Missoula, Montana, on August 29, 2005, when he observed a woman sitting in a parked truck. Officer Turner noted that the woman had parked the truck in front of the house of Wendy Meis (Meis). Officer Turner was familiar with Meis and knew she was on probation for dealing drugs. Officer Turner had been keeping an eye on Meis in light of his three recent encounters with her, including an arrest for probation violations.

¶5    Officer Turner noticed that the woman in the truck looked away from him as he passed. This behavior drew Officer Turner's attention. He decided to run the truck's license plate through dispatch. Dispatch informed him that Thomas owned the vehicle, and that Thomas also was on probation. Officer Turner testified that he could not remember whether dispatch informed him that Thomas was on probation for a felony drug offense, but he affirmed that dispatch customarily supplies such information.

¶6    Officer Turner drove past Meis's house a second time, five minutes later. He noticed that Thomas still was sitting in the parked truck in front of Meis's house. Officer Turner observed that Thomas engaged in "furtive movement" as he passed the second time.

2

Thomas appeared to be reaching for something or trying to hide something within the truck. Officer Turner stopped his car near Thomas's truck. Officer Turner then attempted to contact Thomas's probation officer in Polson by telephone to inquire about Thomas's status. Officer Turner was unable to reach Thomas's probation officer at that time.

¶7 Officer Turner then approached the parked truck and questioned Thomas. Thomas identified herself, and confirmed that she was on probation in Lake County. Thomas explained that she had stopped to visit her friend Meis. Thomas reported that she was waiting in the truck because Meis was still sleeping. Officer Turner returned to his car and successfully contacted Thomas's probation officer. The probation officer informed Turner that Thomas was not to have any contact with any other person on probation and that Thomas recently had failed a urinalysis test. The probation officer requested that Officer Turner search Thomas's truck. Officer Turner's search revealed a drug pipe that later tested positive for methamphetamine.

¶8 The State charged Thomas with felony criminal possession of dangerous drugs and misdemeanor criminal possession of drug paraphernalia. Thomas moved to suppress the evidence on the basis that Officer Turner's initial stop of Thomas constituted an illegal search as it lacked particularized suspicion. The District Court denied the motion after a hearing. Thomas pleaded guilty to the felony charge and the State dismissed the misdemeanor charge. Thomas reserved the right to appeal the search.

## STANDARD OF REVIEW

3

¶9 We review a district court's denial of a motion to suppress evidence for clear error. *State v. Martinez*, 2003 MT 65, ¶ 19, 314 Mont. 434, ¶ 19, 67 P.3d 207, ¶ 19. We determine whether a finding of fact is clearly erroneous based upon whether substantial evidence supports the finding, whether the district court misapprehended the effect of the evidence, and whether we are nevertheless left with a definite and firm conviction that the district court made a mistake. *Martinez*, ¶ 19. We further review a district court's denial of a motion to suppress to determine whether the court's interpretation and application of the law are correct. *Martinez*, ¶ 19. The Court's review is plenary as to whether the district court correctly interpreted and applied the law. *Martinez*, ¶ 19.

## DISCUSSION

¶10 Section 46-5-401(1), MCA, codifies the standard for such an investigatory stop in Montana as follows:

> In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Particularized suspicion can arise from a trained law enforcement officer's inferences and deductions, drawn from objective facts and circumstantial evidence, that suggest some sort of criminal activity. *State v. Gopher*, 193 Mont. 189, 192, 631 P.2d 293, 295 (1981) (citing *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). The process of inferring that particularized suspicion supports an investigatory stop "'does not deal with hard certainties, but with probabilities.'" *Gopher*, 193 Mont. at 192, 631 P.2d at 295 (quoting *Cortez*, 449

4

U.S. at 418, 101 S. Ct. at 695). Whether particularized suspicion supports an investigatory stop constitutes a question of fact that we analyze in the context of the totality of the circumstances. *Martinez*, ¶ 23. A court should consider the quantity or content of the information available to the officer, as well as the quality or degree of reliability of that information. *Martinez*, ¶ 23.

¶11 The parties spend much time on appeal arguing about the significance, if any, of the alleged "furtive movements" made by Thomas as Officer Turner drove past her parked truck. We need not analyze the implications of any alleged "furtive movements" made by Thomas. We start, instead, with the proposition that a probationer, such as Thomas, remains subject to search at any time for reasonable cause at the request of her probation officer. *State v. Burchett*, 277 Mont. 192, 195, 921 P.2d 854, 856 (1996) (citing Admin. R. Mont. 20.7.1101(7)). Thomas's probation officer requested that Officer Turner search Thomas based upon the information that Officer Turner had provided. Officer Turner conducted a valid search of Thomas at the request of Thomas's probation officer under these circumstances. *Burchett*, 277 Mont. at 195-96, 921 P.2d at 856.

¶12 Our inquiry focuses on the single issue of whether Officer Turner possessed the requisite particularized suspicion to approach Thomas to confirm her identity as the owner of the truck. The record reflects that Officer Turner observed a woman sitting in a parked truck. Officer Turner knew that the truck was parked in front of the house of a person on probation. Officer Turner further knew that the owner of the house recently had been arrested for probation violations. Officer Turner also knew that the police and probation authorities

5

continued to suspect the owner of the house of illegal activities and improper associations. Officer Turner decided to run the truck's license plate through dispatch.

¶13   Section 61-3-301(1), MCA, requires that all vehicles operated on Montana's public highways must be registered and must have the proper license plates conspicuously displayed on the front and rear ends of the vehicle. The information contained on a license plate constitutes public information pursuant to the statute. Section 61-3-301(1), MCA. Thomas had no expectation of privacy in the license plate that she knowingly exposed to the public. *See State v. Bullock*, 272 Mont. 361, 375, 901 P.2d 61, 70 (1995) (citing *Katz v. U.S.*, 389 U.S. 347, 351, 88 S. Ct. 507, 511 (1967)). Officer Turner needed no further justification to inquire into Thomas's license plate information.

¶14   The record further reflects that Officer Turner discovered when he ran the truck's license plate through dispatch that a woman named Thomas owned the truck. He learned further that Thomas, the owner of the truck, also was on probation. Officer Turner reasonably inferred that Thomas was the woman in the truck. *Gopher*, 193 Mont. at 192, 631 P.2d at 295. Officer Turner noted that the woman whom he believed to be Thomas remained parked in front of the residence of Wendy Meis, a person on probation for selling drugs, when Officer Turner drove past a second time. Officer Turner knew that Meis recently had been arrested for probation violations, and that law enforcement currently suspected Meis of conducting illegal activities from her home. Officer Turner also knew that one condition of Meis's probation precluded her from associating with other probationers.

6

Finally, Officer Turner knew that the police continued to suspect Meis of these improper associations with other persons on probation.

¶15 The process of inferring that particularized suspicion supports an investigatory stop "'does not deal with hard certainties, but with probabilities.'" *Gopher*, 193 Mont. at 192, 631 P.2d at 295 (quoting *Cortez*, 449 U.S. at 418, 101 S. Ct. at 695). We determine that Officer Turner, an experienced law enforcement officer, reasonably could infer that Thomas was engaged in some sort of criminal activity based upon the fact that he knew that she was on probation, and that he had observed her in a truck parked in front of the residence of another probationer whom the officer knew to be a drug dealer. *Gopher*, 193 Mont. at 192, 631 P.2d at 295.

¶16 The Dissent suggests that Officer Turner could not consider information concerning probationer Meis in determining whether particularized suspicion existed to approach Thomas to confirm her identity. ¶ 20. The Dissent does not explain, however, why Thomas's location in front of the home of a known probationer and suspected drug dealer could not supplement the objective facts and circumstantial evidence from which Turner, a trained law enforcement officer, could infer or deduce criminal activity. *Gopher*, 193 Mont. at 192, 631 P.2d at 295. This information, together with the information Officer Turner had gathered about Thomas, comprised the totality of the circumstances. *Martinez*, ¶ 23. The totality of the circumstances, made up of this objective data and circumstantial evidence, support the District Court's determination that particularized suspicion existed for Officer

Turner's initial investigatory stop of Thomas. *Martinez*, ¶ 23. The District Court's denial of Thomas's motion to suppress did not constitute clear error. *Martinez*, ¶ 19.

¶17 We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

Chief Justice Karla M. Gray, dissenting.

¶18 I respectfully dissent from the Court's decision that particularized suspicion supported the investigatory stop in this case. I would reverse the District Court and remand for further proceedings.

¶19 The Court correctly states the statutory standard for an investigatory stop in Montana as "observ[ations] in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." *See* § 46-5-401(1), MCA. I also agree entirely with the Court that particularized suspicion can arise from a trained law officer's inferences and deductions, drawn from objective facts and circumstantial evidence, that suggest some sort of criminal activity and that the required suspicion does not deal with hard certainties, but with probabilities. *See Gopher*, 193 Mont.

8

at 192, 631 P.2d at 295 (citation omitted).

¶20 The statute and our jurisprudence are clear that one must have particularized suspicion of the person or vehicle subjected to the investigatory stop. Here, that person is Thomas, not Meis. The information regarding Thomas which was available to Officer Turner at the time he initially approached the truck and questioned the occupant—as the record reflects and the Court states at ¶¶ 4-7—was that the vehicle was parked; the woman in the truck looked away from him as he passed; the vehicle's occupant was Thomas; Thomas was on probation; the vehicle was parked for at least five minutes; and Thomas engaged in "furtive movement"— defined by the officer as appearing to be reaching for something or trying to hide something—when Officer Turner drove by the second time. That was the sum and substance of the information Officer Turner possessed which related in any way to Thomas at the time he approached the truck and questioned her. It is that information that either does, or does not, constitute particularized suspicion to make an investigatory stop.

¶21 It is my view that this information falls far short of being sufficient to meet the particularized suspicion standard. The Court brushes past this information and proceeds to information the officer obtained *after* he made the initial investigatory stop. Relying on post-stop information, such as the information here from the probation officer and the probation officer's request that the officer search the vehicle, totally overlooks the fact that the initial contact—the investigatory stop—had already been made. In essence, it seems to be an "ends justify the means" approach. I cannot join the Court in such a result, which apparently is premised on an individual's duties (whether on probation or not) to turn and

9

face a passing law enforcement officer, park for less than five minutes in a lawful parking place, and refrain from reaching for something in the vehicle or making some other movement as an officer is passing by.

¶22    I dissent from the Court's opinion.

/S/ KARLA M. GRAY

Justice James C. Nelson joins in the foregoing dissenting opinion of Chief Justice Karla M. Gray.

/S/ JAMES C. NELSON