

DA 07-0762

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 251

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

GILBERT CAMPA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 05-737
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Koan Mercer, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney; Ingrid Rosenquist, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  December 31, 2008

Decided:  July 28, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 After trial by jury, Gilbert Campa was convicted in the Thirteenth Judicial District Court, Yellowstone County, of two felony counts of possession of dangerous drugs. Campa appeals and raises the following issues:

¶2 Issue 1: Did counsel provide ineffective assistance when he failed to file an affidavit concerning the justification for the stop of Campa's vehicle?

¶3 Issue 2: Did the District Court err in admitting evidence of Campa's prior probation violations and the resulting sanctions?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On August 9, 2005, probation officers Jennifer Welling and Jason Baxter were making routine visits to the homes of probationers in Billings when they spotted a car they knew to be Campa's. At the time, Campa was a probationer under Welling's supervision. After following Campa for a short while, the officers observed him park in front of a house belonging to Jerry Rodriguez. Welling believed this house was associated with drug activity. Campa entered the house, stayed for a few minutes, then left accompanied by two females.

¶5 Welling had received a call from one of Campa's family members which caused her to be concerned about Campa's performance while on probation. Welling knew Campa was having problems staying clean because he recently tested positive twice for drugs. He also underwent two intervention hearings and, as a result, stricter supervision was imposed.

¶6 When Campa left the "known drug house," she and Baxter contacted Billings police officer Steve Feuerstein and asked him to initiate a traffic stop. Feuerstein later testified he

2

believed that Rodriguez, the owner of the house and father of one of the occupants of the vehicle, was a convicted felon. Campa's probation conditions prohibited him from associating with felons.

¶7 Feuerstein stopped and searched the vehicle being driven by Campa. The search revealed a pipe commonly used to ingest dangerous drugs between the driver's seat belt and the center console, a baggie of methamphetamine beneath the pipe on the floor between the driver's seat and center console, and a false-bottom 7-Up can containing pills.

¶8 The State charged Campa with felony criminal possession of dangerous drugs and misdemeanor possession of drug paraphernalia. Before the trial, pursuant to § 46-13-109, MCA, the State filed a notice of its intent to introduce evidence of other crimes, wrongs or acts consisting of felony convictions for possession of dangerous drugs from 1997 and 2002 in Montana, and a 2002 conviction in Nevada for the offense of drug trafficking.

¶9 Campa filed a motion to suppress the evidence found during the search, claiming the stop and search of the vehicle violated his rights under the United States and Montana Constitutions. At the hearing on Campa's motion to suppress, Welling, Baxter, and Feuerstein testified they stopped and searched Campa's vehicle because he had violated his probation conditions by using dangerous drugs and by associating with a convicted felon. At the close of the hearing, the District Court ordered the parties to file proposed findings of fact and conclusions of law. The proposed findings of fact and conclusions of law filed by Campa's counsel recited that an affidavit of Rodriguez was attached, which stated he is not a felon. However, such affidavit was not attached.

3

¶10    The District Court denied Campa's motion to suppress, concluding reasonable cause existed to search the vehicle. The District Court based its conclusion on Campa's difficulties in abiding with the conditions of his probation, Welling's observation of Campa at a known drug house, and that the house was occupied by a suspected convicted felon.

¶11    On the morning of Campa's trial, the State orally sought permission to admit evidence of various drug-related probation violations and sanctions which Campa had incurred over the four to five months preceding his arrest. These acts were not included in the State's initial notice of intent to admit evidence of other crimes. Campa objected to the admission of any evidence related to his prior performance on probation. The District Court overruled the objection. The details of Campa's objection and the court's ruling are discussed below.

¶12    Campa appeals on two grounds. First, Campa claims his counsel was ineffective when he failed to attach Rodriguez's affidavit to his proposed findings of fact and conclusions of law. Campa claims that he was prejudiced by this "clerical failure" because without the erroneous finding that Rodriguez was a felon, the officers did not have particularized suspicion to justify stopping him and his motion to suppress should have been granted. Second, Campa contends that the District Court committed reversible error by allowing the State to admit evidence of Campa's performance on probation and evidence of the sanctions imposed against him.

**STANDARD OF REVIEW**

¶13    We review a district court's denial of a motion to suppress to determine whether the findings of fact are clearly erroneous, and whether the court correctly applied those facts as a

4

matter of law. *State v. Hilgendorf*, 2009 MT 158, ¶ 11, 350 Mont. 412, 208 P.3d 401. We determine whether a finding of fact is clearly erroneous based upon whether substantial evidence supports the finding, whether the district court misapprehended the effect of the evidence, and whether we are nevertheless left with a definite and firm conviction that the district court made a mistake. *State v. Thomas*, 2008 MT 206, ¶ 9, 344 Mont. 150, 186 P.3d 864. The Court's review is plenary as to whether the district court correctly interpreted and applied the law. *Thomas*, ¶ 9.

¶14 Because ineffective assistance of counsel claims constitute mixed questions of law and fact, our review is de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

¶15 Rulings regarding the admissibility of evidence are left to the sound discretion of the trial court, and will not be overturned absent a showing of an abuse of discretion. *State v. Bar-Jonah*, 2004 MT 344, ¶ 97, 324 Mont. 278, 102 P.3d 1229; *State v. Ford*, 278 Mont. 353, 361, 296 P.2d 245, 249-50. The abuse of discretion standard also applies in reviewing a trial court's decision whether to admit evidence of other crimes, wrongs or acts under M. R. Evid. 404(b). *State v. Crosley*, 2009 MT 126, ¶ 26, 350 Mont. 223, 206 P.3d 932; *Bar-Jonah*, ¶ 97; *State v. Aakre*, 2002 MT 101, ¶ 8, 309 Mont. 403, 46 P.3d 648.

**DISCUSSION**

¶16 *Issue 1: Did counsel provide ineffective assistance when he failed to file an affidavit concerning the justification for the stop of Campa's vehicle?*

5

¶17 To prove an ineffective assistance of counsel claim, the defendant has the burden to show: 1) the performance of his counsel was deficient; and 2) that his counsel's performance prejudiced the defense. *Whitlow*, ¶ 10 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064). To show prejudice sufficient to satisfy the second *Strickland* prong, a defendant must demonstrate that a reasonable possibility exists that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Hammer v. State*, 2008 MT 342, ¶ 11, 346 Mont. 279, 194 P.3d 699. When it is possible to dispose of an ineffective assistance of counsel claim because a defendant fails to establish that the alleged error was sufficiently prejudicial to require a new trial, it is best to follow that course. *Hammer*, ¶ 10.

¶18 The search of a probationer's effects may be conducted without a search warrant and pursuant to the lesser standard of "reasonable cause," rather than probable cause. *State v. Smith*, 2008 MT 7, ¶ 15, 341 Mont. 82, 176 P.3d 258. The rationale for applying the lesser standard is that a probationer has a diminished expectation of privacy and a supervising probation officer is in a position to determine the level of supervision necessary to provide rehabilitation to the probationer and safety to the community. Determining the existence of reasonable cause to conduct a probationary search involves a factual inquiry based on the totality of the circumstances. *Smith*, ¶ 15; *State v. Beaudry*, 282 Mont. 225, 230, 937 P.2d 459, 462 (1997).

¶19 In this case, Welling knew of Campa's long history of drug use. She had recent knowledge that Campa was actively using dangerous drugs. She saw Campa stop his car, get

out of the car leaving the motor running, go into a house she knew to be associated with drug activity, come out again in a very short time and drive off. Without consideration of whether Rodriguez was a felon, we conclude that Welling had reasonable cause to stop Campa's vehicle and conduct a search. As the stop and search of Campa's person and vehicle was legal, even if Welling was wrong about Rodriguez's criminal history, the outcome of Campa's motion to suppress would have been the same. Thus, Campa cannot establish he was prejudiced by counsel's failure to attach the affidavit of Rodriguez to the proposed findings of fact and conclusions of law.

¶20    *Issue 2: Did the District Court err in admitting evidence of probation sanctions imposed upon Campa?*

¶21    If the State wishes to introduce evidence of the defendant's prior crimes, wrongs or acts, it must comply with the requirements of § 46-13-109, MCA. Section 46-13-109, MCA, provides:

> (1) Except for good cause shown, if the prosecutor intends to use evidence of other crimes, wrongs, or acts pursuant to Rule 404(b), Montana Rules of Evidence, notice must be given at or before the omnibus hearing held pursuant to 46-13-110.
> (2) The notice must specify the other crimes, wrongs, or acts and must include a statement as to the purpose for which the evidence is to be offered.
>
> (3) The notice must be filed and sealed until the time of trial or until a plea of guilty or nolo contendere is entered by the defendant.

¶22    On October 4, 2005, the State filed a notice of its intention to introduce evidence of Campa's 1997 and 2002 Montana convictions for felony possession of dangerous drugs and his 2002 Nevada conviction for drug trafficking. The notice stated that pursuant to *State v.*

7

*Just*, 184 Mont. 262, 602 P.2d 957 (1979), *State v. Matt*, 249 Mont. 136, 814 P.2d 52 (1991), and M. R. Evid. 404(b), such evidence was relevant and competent to establish intent, plan, knowledge and absence of mistake or accident.

¶23 After substantial delay, the trial commenced on May 21, 2007. Immediately before voir dire commenced, at a hearing in chambers, the State advised that it did not intend to introduce evidence of Campa's prior convictions. The State then moved the District Court to introduce evidence that before Campa was arrested on August 9, 2005, he had tested positive for dangerous drug use on March 5, March 8, March 17, 2005, admitted he used drugs on June 24, 2005, and also on June 28, 2005, probation sanctions were imposed on him for drug use and not reporting to his probation officer as required.

¶24 Campa objected to the introduction of these prior probation violations arguing they were only marginally relevant to the charge and constituted character evidence, the sole purpose of which was to make him look bad. He did not argue he was surprised, or that the evidence must be excluded based on the lack of notice required by § 46-13-109, MCA. Campa's counsel stated he made no objection to the introduction of evidence that Campa was on probation when he was arrested, that he was stopped and searched as a probationer, or that he tested positive for methamphetamine the evening of his arrest.

¶25 The prosecutor responded that evidence of Campa's use of dangerous drugs in the months immediately prior to the charged offense, as well as the fact that a probation sanction was imposed, was highly relevant to whether Campa was in possession of the methamphetamine found in his vehicle.

¶26     The District Court ruled that because Campa was on probation and his probationary status was a part of the reason that the probation officers stopped and searched him, the State could introduce evidence of the intervention hearing and imposed sanctions. However, the District Court prohibited the State from introducing evidence of what caused the intervention hearing.

¶27     At trial, the following exchange occurred during the State's direct examination of probation officer Welling:

> STATE:    Okay. On August 9th of 2005 was [Campa] on your caseload?
>
> WELLING: Yes.
>
> STATE:    Had there been an intervention hearing with the Defendant approximately six weeks before August 5th?
>
> WELLING: Yes.
>
> STATE:    What is the purpose of an intervention hearing?
>
> WELLING: It's more of an informal hearing where we can apply sanctions if a person is not doing as well as we think they should be.
>
> STATE:    And when the intervention occurred with the Defendant in this case was his—the level of supervision increased?
>
> WELING:   Um, there were some sanctions applied, yes.

¶28     When probation officer Baxter testified, he said that part of the reason they stopped Campa was because of "Mr. Campa's history." The State, in accordance with the District Court's order, introduced no evidence of the tests which indicated Campa used drugs prior to his arrest.

9

¶29 The District Court did not give the jury an instruction concerning the purpose of the testimony contemporaneously with Welling and Baxter's testimony that Campa was the subject of an intervention hearing. However, when the District Court instructed the jury after the close of the evidence, it gave an instruction that evidence of prior crimes, wrongs or acts was to be considered only for the purpose of showing the absence of mistake or accident.

¶30 Campa chose to testify in his own defense. During his testimony, he described to the jury his prior methamphetamine and marijuana use, his probation status, and the fact that he was sanctioned for probation violations.

¶31 In closing argument, the prosecutor commented that Welling and Baxter testified Campa was not doing well on probation.

¶32 On appeal, Campa argues that the District Court erred and the judgment must be reversed because the evidence that he was the subject of an intervention hearing and, as a result, sanctions were imposed, was inadmissible character evidence under M. R. Evid. 404(a) and could not be admitted under M. R. Evid. 404(b), as the State did not give notice that it intended to introduce such evidence as required by § 46-13-109(2), MCA, *Just*, and *Matt*.

¶33 The evidence that Campa required an intervention hearing and sanctions imposed upon him as a result of that hearing constitutes evidence of a wrong at a time other than the offense charged. Generally, evidence of other wrongs is inadmissible unless its purpose is to show something other than a defendant's character, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. M. R. Evid.

404(b). If the State intends to introduce evidence of other wrongs under M. R. Evid. 404(b), it must comply with the procedural and substantive requirements of § 46-13-109(2), MCA, *Just* and *Matt*. The State failed to comply with the requirements of § 46-13-109(2), MCA, and the District Court erred in admitting this evidence.

¶34 The State makes no argument that the District Court did not err because Campa failed to object on the ground that no notice was given as required by § 46-13-109, MCA. The State argues on appeal that evidence of the intervention hearing and sanctions is a part of the transaction of the charged offense, and thus admissible under § 26-1-103, MCA. According to the State, the evidence of the intervention and sanctions was part of the possession of dangerous drug transaction because Campa was arrested by probation officers and his probationary status was the reason the officers stopped and searched him.

¶35 Section 26-1-103, MCA, provides that prior acts of an accused may be admissible as a part of an alleged criminal transaction when those acts form part of the transaction which is itself the fact in dispute or if they are evidence of that fact. Admissibility under the transaction rule is predicated on the jury's right to hear what happened prior to the alleged offense, so that it may evaluate the evidence in the context in which the alleged criminal act occurred. *See State v. Derbyshire*, 2009 MT 27, ¶ 29, 349 Mont. 114, 201 P.3d 811. Evidence of acts which is admitted under § 26-1-103, MCA, is not character evidence excluded by M. R. Evid. 404(b) and likewise is not subject to the notice and other requirements of § 46-13-109, MCA, because such acts are considered to be part of the transaction and not wholly independent of the offense the defendant is alleged to have

11

committed. If evidence of prior acts is to be admitted, such other acts of the accused are to be linked to, and explanatory of, the charged offense. *Crosley*, ¶ 48 (citing *State v. Lozon*, 2004 MT 34, ¶ 12, 320 Mont. 26, 85 P.3d 753).

¶36 The fact at issue at trial was whether Campa possessed dangerous drugs. Even though he did not object to evidence he was on probation, this fact is of highly questionable relevance. Still, the lawfulness of the search is not an element of the crime charged. The source of Welling and Baxter's authority to stop and search Campa is not inextricably linked to his alleged possession of methamphetamine. *Derbyshire*, ¶ 34. The transaction rule is not a basis for admitting evidence of the intervention hearing and sanctions.

¶37 Because the State did not give timely written notice of its intent to introduce evidence of other wrongs, which typically specifies such wrongs and includes a statement as to the purpose for which the evidence is to be offered, we conclude the District Court erred when it admitted evidence of the intervention hearing and resulting sanctions. The State makes no argument this error was harmless.

## CONCLUSION

¶38 The judgment of the District Court is reversed and this case is remanded for a new trial conducted in conformity with applicable law and this opinion.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE